**Dennis R. CINTRON, Plaintiff,**

v.

**Brock ADAMS et al., Defendants.**

Civ. A. No. 77–1919.

United States District Court, District of Columbia.

Aug. 8, 1978.

Joel D. Joseph, Washington, D. C., for plaintiff.

Robert M. Werdig, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

### Introduction

Plaintiff, a Spanish-speaking, Spanish-surnamed male of Puerto Rican origin, has brought this action against defendant, Secretary of Transportation, pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e, *et seq.* He alleges that he was discriminated against in his employment on the basis of his national origin. He was employed as a GS–12 Computer Specialist with the Transportation Computer Center (TCC) and its predecessor organization, the Computer Services Division (CSD) of the Federal Highway Administration (FHWA), a component of the Department of Transportation (DOT).

Plaintiff alleges he was the victim of discriminatory treatment because he was not selected for either of two GS–13 Computer Specialist positions which became vacant during his tenure with the agency. He contends that (1) an "assessment of potential" completed by his first-line supervisor and submitted to the panel considering applicants for the two GS–13 vacancies was not consonant with his prior "annual performance" ratings by the same supervisor; (2) that three of the categories used to rate the candidates resulted in a subjective and biased evaluation of plaintiff; (3) that plaintiff's annual performance evaluations for 1974 and 1975 did not accurately reflect the level of his performance; (4) that he was relieved of several projects which had been assigned to him prior to their completion; and (5) he was subjected to continual harassment and surveillance by supervisory personnel, all resulting in his constructive discharge. Plaintiff seeks declaratory and injunctive relief, back pay, and reinstatement.

This matter came before the Court on June 15 and 16, 1978 for a trial *de novo. Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). Following presentation of plaintiff's case-in-chief, including the testimony of plaintiff, the testimony of his other witnesses, exhibits, and arguments of counsel for both parties, the Court concluded that upon the facts and the law, plaintiff was not entitled to relief. Accordingly, defendant is entitled to judgment pursuant to Rule 41(b) Fed.R.Civ.P.[1] As a basis therefor, the Court makes the following:

### Findings of Fact

1. Plaintiff was born in Santurce, Puerto Rico. He has spoken Spanish fluently since childhood, primarily with members of his immediate family.

2. Plaintiff began his employment with the FHWA, CSD, in June 1968 as a Computer Systems Analyst, GS–9. He was promoted to a GS–11 Computer Systems Ana-

---

1. The Court entered judgment for defendant on June 30, 1978.

lyst in July 1969, and to a GS–12 Computer Specialist in November 1970.

3. From the time that plaintiff began working at FHWA, he was taking courses leading toward a Masters Degree in Business Administration on a part-time basis at the University of Maryland. The total cost of tuition and books for plaintiff's Master's Degree was paid for by FHWA. Plaintiff took annual leave to attend classes. He admitted receiving a letter of reprimand from his supervisor for occasionally arriving late for work or sometimes not at all, following his classes. In November 1971, he received his Degree.

4. In July 1974, the Computer Services Division was reorganized and plaintiff was transferred to the FHWA Transportation Computer Center.

5. Between his entry on duty in June 1968 and July 1974, plaintiff had several first-line supervisors, including Jack Reinhart, Jim Ryan, Theral Neilson and finally, Jerry Willey. In July 1974, plaintiff came under the immediate supervision of Raymond W. Smith.

6. Approximately four months later, Mr. Smith prepared an annual "performance evaluation record" of plaintiff (hereinafter referred to as the "1974 rating"). With regard to plaintiff's skills, knowledges and abilities (Part IV of the evaluation), Mr. Smith evaluated plaintiff as outstanding in seven out of a possible eleven rating factors in the nonsupervisory category. For the remaining four factors, plaintiff received an above average rating.

7. Following a discussion between plaintiff and Mr. Smith concerning his 1974 rating, Mr. Smith raised plaintiff's rating with regard to Item 1, "knowledge of principles and practices in own area of work", and Item 2, "understanding of work related to, but not outside of own specialty or technical area," from above average to outstanding. Smith later reconsidered the evaluation of plaintiff and entered the following remark on the 1974 rating:

"When Mr. Cintron and myself discussed this evaluation on October 30, 1974, I was persuaded to increase Items 1 and 2 of Part IV to Column D [outstanding]. However, after reflecting on this overnight, I cannot in good conscience justify those changes. Therefore, I had a new DOT Form F 3430.1 prepared and completed it as originally evaluated on October 30.

Raymond W. Smith
K.K." [2]

8. With regard to plaintiff's performance (Part II of the evaluation), Mr. Smith's conclusions were that he "far exceeds requirements" as to timeliness of work and "exceeds requirements" as to quality and quantity.

9. On November 11, 1975, Mr. Smith prepared a second performance evaluation record on plaintiff (hereinafter referred to as the "1975 rating"). In the eleven categories in which plaintiff was again rated as to his skills, knowledges and abilities in the nonsupervisory category, he received an outstanding rating in only three factors, above average in three and satisfactory in five.

10. Regarding plaintiff's performance, the 1975 rating indicated "meets requirements" as to quality and "exceeds requirements" as to quantity and timeliness of work.

11. Mr. Smith did not complete Part B of the skills, knowledges and abilities evaluation calling for a rating of plaintiff's supervisory performance in either 1974 or 1975.

12. On both the 1974 and 1975 performance evaluations, plaintiff received an annual performance rating certification of "satisfactory" (performance met or exceeded minimum requirements).[3] Plaintiff appealed the satisfactory rating given him by

---

2. These initials represent the name of plaintiff's second level supervisor, Mr. Keith Kohler.

3. The form requires a written justification for a performance rating of either "outstanding" (all aspects of performance clearly and specifically exceeded requirements to the point where the employee deserves special commendation) or "unsatisfactory."

the 1975 rating, contending he should have been rated "outstanding."

13. The Federal Highway Administration convened an *ad hoc* panel to review plaintiff's appeal of his satisfactory rating.

14. One of the members of the *ad hoc* committee, Coast Guard Lt. Commander John K. Andrews, testified that he had the opportunity to work in a liaison capacity with plaintiff for between six to twelve months. He was not, however, responsible for the day-to-day supervision of plaintiff, the assignment of duties to plaintiff, or the review of plaintiff's other tasks and responsibilities. In his opinion, plaintiff's work was above average—in the high range of satisfactory—but not of the quality to entitle him to an outstanding rating for the year in issue. Commander Andrews based his opinion on the objective information supplied to the panel as well as on his personal experience gained through working with plaintiff. Likewise, it was the conclusion of the entire board that plaintiff's satisfactory rating was accurate.

15. As part of his appeal of the satisfactory rating, plaintiff submitted sample documentation of his work product to support his claim he should have received an outstanding rating. The agency also submitted documentation of plaintiff's work product to support the rating given him. The documents submitted by the agency and plaintiff were the same.

16. In late August 1975, FHWA posted a position vacancy announcement for a Senior Computer Specialist, GS–13, within the Transportation Computer Center. Plaintiff testified that he did not recall whether he applied for the vacancy although he remembers working on application papers.

17. In mid-November 1975, FHWA posted two vacancy announcements for Computer Specialist positions, GS–13, within the Transportation Computer Center. The two positions were described as Computer Specialist "Short Range" and "Long Range."

18. Twenty-eight applicants determined eligible were evaluated by a three-member promotion panel for each of the vacancies. The promotion panel evaluated each person according to five ranking factors:

  I. Experience—breadth and level of experience Source—SF–171.

  II. Supervisory and Managerial Qualifications Source—Assessment of Potential, Part A.

  III. General Characteristics and Communications Source—Assessment of Potential, Parts B & C.

  IV. Technical Skills and Knowledges Source—Assessment of Potential, Part D.

  V. Education, Training and Awards Rated by personnel.

19. The "assessment of potential" used by the promotion panel was a document prepared by the applicant's immediate supervisor and required him/her to indicate how the individual *would* perform in a supervisory or managerial position. It appeared to the Court to differ both in form and purpose from the aforementioned performance evaluation.

20. On December 22, 1975, plaintiff's immediate supervisor, Raymond W. Smith, prepared an assessment of potential of plaintiff.

21. On or about January 26, 1976, the selectees for the two Computer Specialist positions were announced. Of the two successful candidates, one, Allen Li, was a member of an ethnic minority group (Oriental).[4]

22. Plaintiff's total scores based on all five ranking factors were not sufficient for him to be included among the six best qualified candidates for the positions.

23. If the scores given by the promotion panelists were taken only as to ranking factors I and V, experience and education, plaintiff shows a slight raw score edge over the selectees for the two vacancies.

24. The proposed ranking factor values used by the panel reveal that for factor V, education and training, an applicant who held a Master's Degree automatically re-

---

4. The other vacancy was filled by a non-minority, Mr. William Fennell.

ceived 15 points out of a possible 20 if the subject matter field related to the applicant's occupation. While plaintiff had such a Master's Degree, the two selectees had only Bachelor's Degrees (worth either 5 or 10 points depending on whether the subject matter related to the occupation).

25. The scoring for factor I, experience, was based largely on the information provided in each applicant's self-composed and edited Standard Form 171, Personal Qualifications Statement.

26. Plaintiff testified that following his non-selection for the two GS–13 vacancies, projects assigned to him which he had not completed were taken away. He was unable to recall when he was given the respective tasks. He had on occasion sought and been granted time extensions. However, he admitted to having received criticism for failing to meet deadlines.

27. An example of plaintiff's claim that projects were taken away from him was a self-generated project involving a user who ultimately told plaintiff and his supervisor that the performance tentatively tendered by plaintiff was being investigated pursuant to a contract let to private industry. Upon receipt of this information, plaintiff's supervisor instructed him to write a memorandum for the file indicating the project was terminated. Plaintiff testified he ignored his supervisor's instruction and never wrote the memorandum because he personally did not view the project as closed.

28. Plaintiff also claimed he received no new projects after January 26, 1976. However, he later admitted that he had in fact been tendered an assignment in March 1976 which he declined to accept.

29. On March 2, 1976, plaintiff filed a formal complaint of discrimination. Following an investigation and administrative hearing, the Civil Service Commission's EEO complaints examiner recommended a decision adverse to plaintiff. This recommendation was ultimately adopted as DOT's final decision with regard to plaintiff's complaint.

30. On May 14, 1976, plaintiff resigned his position at FHWA.

31. Plaintiff testified that after leaving FHWA, he went into business for himself preparing income tax returns. He admitted to having failed to file his own personal federal income tax return for the last taxable year. He claimed that because he had sustained a business loss, he was not required to file a tax return.

Having made the foregoing findings of fact and based thereon, the Court makes the following:

### Conclusions of Law

1. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e, *et seq.*

2. Plaintiff has timely filed suit pursuant to 42 U.S.C. § 2000e, *et seq.* after exhausting available administrative remedies.

3. The plaintiff has the initial burden of proving a *prima facie* case of employment discrimination if he is to prevail in a Title VII case. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). He must do so by a preponderance of the evidence.

4. In Title VII cases, the proof required to establish a *prima facie* case may vary with the differing factual situations. *Id.* at 803, n. 13, 93 S.Ct. 1817. In this case, plaintiff has failed to meet his burden of making out a *prima facie* case of discrimination based on his national origin.

5. Plaintiff has relied on various forms of statistical data and comparisons in an attempt to meet his burden. He has introduced a chart entitled "Staffing Pattern by Minority Group and Grade—Full-Time Employees as of June 30, 1975—AA for Administration". Plaintiff's Exhibit 1. He has also introduced a comparison of the numerical ratings given him by each member of the selection panel for each of the five factors[5] taken into consideration with those given to each of the six best qualified candidates, including the two selectees, Mr. Li

5. See paragraph 18, *supra.*

and Mr. Fennell. Plaintiff's Exhibits 11 and 12. Finally, he has introduced a comparison of his scores in selected categories of his annual performance rating received October 31, 1974 with those received December 22, 1975 in allegedly comparable categories on his assessment for potential for computer specialist rating. Plaintiff's Exhibit 9. He has attempted to convince this Court that since three of the five criteria used by the selection panel are based on an evaluation of the candidates' assessment for potential, (1) the nature of the evaluation is such that it necessarily involves the use of their supervisors' subjective appraisal of the candidates' potential for performance; (2) the criteria have no relationship to the positions in question; and (3) the use of these "subjective criteria" has had a discriminatory effect on plaintiff because of his national origin.

6. The Court is mindful of the probative value of statistics in an employment discrimination case. However, plaintiff's statistics regarding defendants' staffing pattern by a minority group and grade for the relevant office, without more, are insufficient to make out a *prima facie* case of discrimination. He has made no attempt to compare these figures with, for example, the number or percentage of qualified members of that minority in the relevant labor market. *See, e. g., Int'l. Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Thus, the Court finds that plaintiff's Exhibit 1 is virtually meaningless as support for plaintiff's claims of discrimination based on his national origin.

7. Plaintiff's comparison of the points given him by the promotion panel for each of the five determinative factors with the points awarded to each of the six most qualified applicants for the positions in question does not suffice to establish a discriminatory effect on minorities. In fact, one of the vacancies was filled by a member of a minority (Oriental). In particular, plaintiff has not established any discrimination based on his national origin emanating from the necessarily subjective appraisal of the candidates by their supervisor(s) with regard to factors II, III and IV. "[Subjective criteria] are not to be condemned as unlawful per se, for in all fairness to applicants and employers alike, decisions about hiring and promotion in supervisory and managerial jobs cannot realistically be made using objective standards alone." *Rogers v. International Paper Co.,* 510 F.2d 1340, 1345 (8th Cir. 1975), *vacated and remanded on another issue,* 426 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975), *opinion on remand,* 526 F.2d 722 (8th Cir. 1975). Where an employee with little or no previous supervisory experience applies for a position which will require the exercise of supervisory skills, an assessment of the applicant's potential for developing and implementing such skills is entirely reasonable. The person most capable of making such an evaluation would naturally be his supervisor, the person most often in a position to observe the candidate's abilities. In addition, plaintiff has made no attempt to ascertain whether defendants' use of the assessment for potential form has consistently served to exclude Spanish-speaking people from being hired or promoted. He has not formulated or compared the percentage of minority (Spanish-speaking) applicants or employees whose qualifications were measured by the assessment for potential form and ultimately selected for a job or promotion with the percentage of the overall market selected on the basis of these criteria. *See, e. g., Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed. 786 (1977).

8. The Court is similarly unconvinced of the significance or relevance of plaintiff's comparison of his rating for certain items in his annual performance evaluation with that for certain categories of his assessment for potential. Rather, the Court finds that this is tantamount to the proverbial mixing of "apples and oranges" and cannot be used as a basis for a finding of discrimination. Furthermore, even if this were a relevant comparison, plaintiff's choice of his 1974 annual performance rating and an assessment for potential prepared over a year later is misleading. The alleged disparities on which plaintiff relies diminish if one

compares his assessment for potential scores with those on his 1975 annual performance rating. These two evaluations were prepared only one month apart.

9. Since plaintiff has failed to make out a *prima facie* case of discrimination resulting from the use of the challenged selection criteria, defendants need not demonstrate their "manifest relationship to the employment in question." *Dothard v. Rawlinson, supra,* 433 U.S. at 329, 97 S.Ct. at 2126, *quoting Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Nonetheless, as indicated above, the Court finds that the criteria in question bore the necessary relevance to the positions for which plaintiff applied, and that the goals underlying the subjective criteria did not reveal "underlying personal biases or discriminatory stereotype classifications." *Rogers v. International Paper Co., supra,* 510 F.2d at 1346.

10. Plaintiff is most articulate and displays an excellent command of the English language. Based upon his own testimony, the Court's personal observation of his demeanor and assessment of his credibility, the Court finds that his claims of reprisal and of constructive discharge are unfounded. Based largely on the credibility of plaintiff's witness, Lt. Commander Andrews, the Court finds that plaintiff's 1975 annual performance rating of "satisfactory" was proper.

11. Plaintiff has failed to show that his assignments were systematically taken from him following the filing of his EEO complaint or that no new assignments were given him. Rather, it appears that in at least one instance, a project was terminated because of lack of user interest. In addition, plaintiff was given a new assignment in early March 1976 which he refused to take.

12. The acts characterized by plaintiff as harassment by his supervisors were, in part, a result of a perceived need for stricter supervision of plaintiff due largely to his propensity to arrive at work late or not at all following his attendance at classes at the University of Maryland.

13. The acts plaintiff complains of, either individually or taken as a whole, were insufficient to constitute a deliberate attempt by defendants to make plaintiff's "working conditions so intolerable that [he] is forced into an involuntary resignation," which would be tantamount to a constructive discharge. *Young v. Southwestern Savings & Loan Association,* 509 F.2d 140 (5th Cir. 1975).

Accordingly, upon the evidence produced in open court and the law, plaintiff has failed to establish a right to relief against defendant. Defendant is entitled to judgment on the merits (entered June 30, 1978) and dismissal of this action.