Saundra H. SCHAULIS, on behalf of herself and others similarly situated, Plaintiff,

v.

CTB/McGRAW–HILL, INC., Defendant.

No. C–79–0127–WAI.

United States District Court, N. D. California.

Aug. 15, 1980.

Shirley & Shepherd (George P. Shirley, Rodney J. Shepherd), Pacific Grove, Cal., Barbara Ashley Phillips, San Francisco, Cal., for plaintiff.

McCutchen, Doyle, Brown & Enersen (Jack G. Knebel, Rita L. Giles, John M. Riestenberg, Michael S. Hindus), San Francisco, Cal., for defendant.

## MEMORANDUM OF DECISION

INGRAM, District Judge.

*Introduction*

Saundra Schaulis applied for a job as an Editor at CTB/McGraw–Hill, a test publishing company, on September 8, 1977, and began work as a temporary Assistant Editor I three days later. Ten months later she was promoted to Assistant Editor II, and received a salary increase, along with promotion to permanent status. However, believing that she had been subjected to unlawful discrimination on the basis of sex, plaintiff filed two charges with the Equal Employment Opportunity Commission ("EEOC"), and ultimately resigned from her job thirteen months after she was hired. This sex discrimination class action, brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, was filed in March 1979.

Defendant has moved for summary judgment. On March 5, 1980, this Court issued a Memorandum of Decision granting defendant's motion. On March 17, 1980, plaintiff moved for reconsideration. The Court indicated that it was inclined to reconsider its earlier ruling, and invited oral argument. On July 28, 1980, extensive oral argument took place before the Court. On the basis of the moving papers, supporting documents, and the oral arguments, this Court now reaffirms its earlier decision granting defendant's motion for summary judgment. However, the Court believes that a reiteration of its reasoning is appropriate, and thus the motion is granted for

the reasons discussed herein, rather than for those expressed in the March decision.

*Summary judgment*

There is no question that the party moving for summary judgment is held to a stringent standard. Summary judgment cannot be granted unless the moving party would prevail even if any doubt as to the existence of a genuine issue of material fact is resolved against him. The evidence must be construed in favor of the opposing party, and the opposing party is given the benefit of all favorable inferences. The standard of review was succinctly set forth in the following terms by Judge Renfrew:

> On a motion for summary judgment, the moving party carries the burden of showing that there is no genuine issue as to any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In addition, inferences to be drawn from the underlying facts must be drawn against the movant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). But, once the moving party meets the initial burden, Rule 56(e) of the Federal Rules of Civil Procedure requires the opposing party to respond with "specific facts showing that there is a genuine issue for trial." [cites omitted] Unless an opposing party takes advantage of Rule 56(f) of the Federal Rules of Civil Procedure and files affidavits stating the reasons why "facts essential to justify his opposition" could not be presented, a failure to comply with Rule 56(e) is a proper ground upon which to grant summary judgment.

*Corbin v. Pan Am. World Airways, Inc.*, 432 F.Supp. 939, 945–46 (N.D.Cal.1977). When a motion for summary judgment is made and is properly supported by affidavits and other testimony, the plaintiff must no longer "rest upon the mere allegations or denials of his pleading", but must "set forth specific facts showing that there is a genuine issue for trial." F.R.Civ.P. 56(e). *See Zoslaw v. Columbia Broadcasting System, Inc.*, Slip Op. at 2, 9 (N.D.Cal. January 17, 1980, No. C.75–0007–RFP). As Judge Zir-

poli has emphasized, "[u]nfortunately for plaintiff, absent a showing as provided in Fed.R.Civ.Proc. 56(f), a motion for summary judgment cuts short any future time for putting facts in issue." *Grimm v. Westinghouse Electric Corporation*, 300 F.Supp. 984, 991 (N.D.Cal.1969).

In this case, defendant has meticulously presented its motion for summary judgment. Appropriate affidavits and the requisite excerpts from deposition testimony have been included in the moving papers. Defendant has submitted uncontroverted evidence of legitimate, nondiscriminatory reasons for its actions, satisfying its burden of proof and establishing an undisputed defense to the allegations of discrimination. Plaintiff unfortunately devotes more time to a discussion of the legal standards for summary judgment and a *prima facie* case under Title VII than to identification of the evidence in the record of those specific *facts* upon which she bases her claim of sex discrimination. In addition, plaintiff has filed neither her own affidavit nor those of others to cast doubt on the factual assertions contained in defendant's affidavits. The Court is left with little more than the mere allegations in the complaint, supported by excerpts from deposition testimony which often appear to be irrelevant. Despite the suggestion made by counsel that defendant and its counsel were "bullying" plaintiff, this Court can only conclude that plaintiff has failed to meet her burden in opposing this motion. Her inadequate response alone would justify the entry of summary judgment. *See Corbin, supra*, 432 F.Supp. at 946; *Grimm, supra*, 300 F.Supp. at 991. However, since the evidence demonstrates that plaintiff as well has failed to state a *prima facie* case of sex discrimination, the Court will examine plaintiff's substantive claims *seriatim*.

*Prima facie case under Title VII*

The Supreme Court set forth the standards for a *prima facie* case under Title VII in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) in the following terms:

The complainant in a Title VII trial must carry the initial burden under the statute of establishing a *prima facie* case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

Plaintiff carries the initial burden of showing actions taken by the employer from which it can be inferred that it is more likely than not that such actions were "based on the discriminatory criterion illegal under the Act." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). Once a plaintiff has set forth a *prima facie* case, the burden shifts to the defendant to articulate a nondiscriminatory reason for its employment decision. In short, the defendant must dispel the adverse inference that may be drawn from the *prima facie* case. *McDonnell Douglas, supra*, 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant successfully rebuts this inference, the burden shifts back to the plaintiff to prove that the articulated reason is only a pretext for discrimination. *Board of Trustees v. Sweeney*, 439 U.S. 24, 25, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1978); *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577–78, 98 S.Ct. 2943, 2949–2950, 57 L.Ed.2d 957 (1978). *See also Lim v. Citizens Sav. and Loan Ass'n*, 430 F.Supp. 802, 814 (N.D.Cal.1976).

In this case, plaintiff has detailed numerous examples of conduct which she contends reflect defendant's unlawful sex discrimination. However, in each respect, plaintiff's claim fails to establish a *prima facie* case under the *McDonnell Douglas* standards and, in addition, defendant has rebutted plaintiff's showing with such an overwhelming display of legitimate reasons for its decisions that "no genuine issue of material fact" as to discrimination remains.

Plaintiff has voiced nothing that transcends the level of complaints with the employment policies and working conditions of defendant. Even if all of plaintiff's allegations were proven true, the only conclusion that could be drawn is that defendant has suffered from some lack of managerial expertise and poor employer–employee relations. However, Title VII is not designed to insure that employees receive only fair and objective treatment from their employers. It is not unlawful to treat employees unfairly, if all employees are similarly treated. *Morita v. Southern Cal. Permanente Medical Group*, 541 F.2d 217, 218–20 (9th Cir. 1976), *cert. denied*, 429 U.S. 1050, 97 S.Ct. 761, 50 L.Ed.2d 765 (1977). Title VII is intended only to prohibit discrimination for specified reasons.

The fatal flaw in plaintiff's claim is that she has failed to identify one instance of *discriminatory* behavior. There is no example of disparate treatment afforded to a man, customarily, in comparable situation. *International Brotherhood of Teamsters, supra*, 431 U.S. at 335 n. 15, 97 S.Ct. at 1854; *Furnco Construction Corp., supra*. She has repeatedly been forced to concede that the alleged malfeasances of defendant afflicted both men and women equally. Indeed, plaintiff has been unable to rebut defendant's factual showing that she even received better treatment than the men who began employment at about the same time. Because plaintiff has failed to show either discriminatory impact or discriminatory effect, she has not stated a *prima facie* case. As stated by the court in *Windom v. City of St. Louis*, 427 F.Supp. 806, 813 (E.D. Mo.), *aff'd*, 568 F.2d 78 (8th Cir. 1977), "actions taken by her supervisor do not constitute sex discrimination simply because plaintiff continually labeled them as such." Indeed, there is much evidence in this record from which to conclude that "plaintiff saw bogeymen where there were none and unjustifiably attached improper motives and racial and sex overtones to many events and relationships during the year of her employment with [defendant]." *Donaldson v. Pillsbury Co.*, 406 F.Supp. 1210, 1213 (D.Minn.1976).

*Permanent vs. Temporary Employment*

Plaintiff devotes much effort to her claim that she suffered from sex discrimination because she was initially hired on a temporary basis, while she claims that she applied for a permanent position. There is substantial dispute over this question. However, for the reasons discussed herein, this does not constitute a genuine issue of material fact which would serve to defeat summary judgment.

Crucial to the *McDonnell Douglas* formulation of the *prima facie* case is the requirement that the plaintiff be rejected for the position at issue, and that after her rejection, the job remained open and the employer continued to seek applicants from other qualified persons.

Plaintiff was hired. She simply cannot escape from the fact that she was not rejected for a job. Nor can she verify her contention that any job remained open after she was hired on a temporary basis. Defendant has presented uncontroverted evidence that one permanent position was available at the time plaintiff was hired. However, this position was filled ultimately by another woman later in the year for work in another department. *See* Tonn Deposition, v. II, pp. 29–34, Tonn Declaration, p. 1, ¶ 2 ("The one permanent opening available was eventually used on December 28, 1977 to make a woman, Meredith Mullins, who was a temporary Assistant Editor I, a permanent Assistant Editor I. At the time Saundra Schaulis was hired, CTB had no opening for editors above the Assistant Editor I level."). Plaintiff conceded as much in her Memorandum in Opposition to Defendant's Motion for Summary Judgment, p. 12 ("[T]he position for which Saundra applied did in fact exist . . . but for some reason CTB/McGraw Hill had decided that the permanent position was going to be needed a little bit later, and that the position should be held open and reserved for a more crucial need.").

Plaintiff thus can neither show that she was rejected for the job nor that it remained open after her rejection. In this regard the Ninth Circuit has held,

We note that these four elements [of the *prima facie* case] assume the existence of a fifth: that the position in question had not already been filled before it was sought by the complainant. Necessarily, the failure to prove the existence of a job opening is a fatal defect in a *prima facie* case of overt discrimination.

*Chavez v. Tempe U. High Sch. Dist.*, 565 F.2d 1087, 1091 (9th Cir. 1977). In *Chavez*, the position no longer remained open because it had previously been filled. Here, defendant has presented uncontroverted evidence that there was only one permanent position available at the time plaintiff applied, and that management had exercised its prerogative to utilize it for another job.

An additional flaw in plaintiff's claim is her inability to point to any comparably skilled men who were hired into permanent or higher level positions around the time of her application for employment. *See* Schaulis Deposition, v. I, p. 69 ("Q. Well, do you know of any other men with backgrounds and experience similar to yours who were brought in to the Publishing Department at higher levels than yourself? A. No, I do not."). Indeed, the best that plaintiff could come up with was the assertion that generally men hold higher positions than women in defendant's Test Development department. However, defendant has presented uncontested evidence that more women than men held high level positions. *See* Tonn Declaration, p. 2, ¶ 3. The Court does note that while the statistical sample is too small to serve as conclusive evidence, the figures do serve to rebut the negative inference that plaintiff urges us to draw.

Plaintiff essentially argues that defendant was obligated to hire her in a permanent position because there was some permanent position available. This presumably is because she was qualified for a permanent position, because she believed that she had applied for a permanent position, and because unquestionably she was given the erroneous impression at the time of hiring that it was for a permanent position. Plaintiff's qualifications are not in issue.

The critical issue is whether or not the job plaintiff sought was available. Plaintiff has conceded that the one permanent job undeniably open was used later in the year for another position. As the court stated in *Chavez, supra*, 565 F.2d at 1094, the fact that the job ultimately went to a woman is "striking evidence" that discrimination on the basis of sex was not at work. There is equally no significance to the fact that she was originally told that she was hired on a permanent basis. Within a few hours, she was informed of the error, and that in fact only a temporary position was available. An administrative snafu cannot bind defendant to hire plaintiff into a job it contends did not exist. It certainly cannot be used as the basis for a claim of sex discrimination. In a comparable context, this argument was rejected by Judge Orrick.

> Plaintiff's sole argument is apparently that defendant should have tried harder to find an opening for her or to fit her into available openings . . . [Defendant] has adequately shown that what it did do was legitimate; plaintiff's speculations as to what defendant *might* have done in this case do not cast [its] *actual* determination in a different light.

*Lim, supra*, 430 F.Supp. at 816.

The permanent verses temporary job dispute cannot form the basis for a sex discrimination charge. Plaintiff was hired. The job she sought did not remain open for future applicants. Perhaps the most significant point is that plaintiff can point to no instance of different treatment of men. This is similar to the situation analyzed by Judge Richey in *Briscoe v. Director, Admin. Office*, 20 FEP Cases 516, 518 (D.D.C.1977).

> [T]here is no evidence in the record that the failure to describe plaintiff's position accurately was in any way the product of race discrimination. The evidence in the record indicates that the continued misdescription was merely the produce [sic] of inadvertence and was in no way affected by the fact that the plaintiff is black. Thus, plaintiff has failed to establish a *prima facie* case that the misdescription of her position was a produce [sic] of race discrimination in violation of Title VII.

This Court must find that the mere fact that plaintiff was hired on a temporary basis does not state a *prima facie* case of sex discrimination under the standards outlined in *McDonnell Douglas*.

*Refusal to promote*

■ Plaintiff contends that she should have both been promoted to permanent status and to a higher job classification more quickly, and that defendant's failure to do so constitutes sex discrimination.

The uncontroverted evidence shows that plaintiff was made permanent more quickly than either of the two male employees hired at her level in 1977. The Tonn Declaration establishes, and plaintiff has directed our attention to no contrary evidence, that out of the eight persons hired as temporary employees at level 12 in Test Development during 1977 who subsequently achieved permanent status, six, including both males, had to wait until January 1979 to become permanent. Of the remaining two, one woman, Mullins, was made permanent approximately two months after she was hired. The other, plaintiff Schaulis, was made permanent on September 11, 1978, just less than one year after she was hired. *See* Tonn Declaration, pp. 2–3, ¶ 5.

Plaintiff cannot claim that either she personally or women as a group were made permanent less quickly than men because the record establishes exactly the opposite. Men and women were treated essentially equally, with the exception of plaintiff and another woman, and both exceptions received treatment that can only be characterized as preferential in the light of the ordinary progression from temporary to permanent status.

Plaintiff devotes more attention to her claim that she was kept in the lower level temporary Assistant Editor I position while being required to work at the job description of higher level Assistant Editor II. Basically, plaintiff contends that she worked as a functional project director, and that Assistant Editors I would ordinarily not serve in that capacity. *See* Memoran-

dum in Opposition, pp. 14–15. However, plaintiff conceded in her deposition that she did not do any project direction until the last ten weeks of her employment. Indeed, plaintiff's own record of her work on the project shows that she began work on July 19, 1978. She was recommended and approved for promotion to Assistant Editor II on July 20, 1978. *See* Schaulis Deposition, Exhibits 8, 12. Thus, plaintiff's claim fails to establish a *prima facie* case of discrimination because she was properly classified when she began to work as a project director.

However, even if plaintiff had not been reclassified at this time, she would fail to state a *prima facie* case of sex discrimination because she has pointed to no evidence that the alleged misclassification was influenced by considerations of sex. A similar contention was rejected by the court in *Briscoe, supra,* 20 FEP Cases at 518:

> With regard to the alleged misclassification of her job, i. e., the failure to upgrade the position to GS–5 or higher, plaintiff has failed to introduce evidence sufficient to establish a *prima facie* case that the position was in fact misclassified. More importantly, there is no evidence in the record that the agency's decision not to upgrade plaintiff's position was in any way influenced by the fact that plaintiff is black. Thus, plaintiff has also failed to establish a *prima facie* case that the alleged misclassification of her position was the product of race discrimination in violation of Title VII.

Plaintiff has not identified one scintilla of evidence that similarly situated males received better treatment. As stated by the court in *Clark v. South Central Bell Tel. Co.,* 419 F.Supp. 697, 710 (W.D.La.1976):

> To be successful in presenting a *prima facie* case of racial discrimination, one further step is necessary. The plaintiff must prove that a person of a different race [or sex] was or would have been treated more favorably. Thus, a *prima facie* case of employment discrimination due to race or color, brought by a black person, consists of a showing of racial

identity, followed by evidence of adverse treatment by the defendant, followed by evidence that white employees did receive or would have received better treatment under the same or similar circumstances. Since none of the plaintiffs bridged the gap of the final element of proof, their cases failed.

Plaintiff's claim here falls for the same reason.

Plaintiff also contends that she was subjected to sex discrimination when she was denied a two level promotion that had been recommended by her supervisor. This argument is closely tied to plaintiff's argument that she was working outside her job classification. However, as discussed above, plaintiff's *prima facie* case fails because she can point to no evidence that any assignment or promotion decisions were influenced by an employee's sex. With respect to the pay increase, plaintiff emphasizes that her supervisor, a male, had lobbied vigorously for the two level jump. That is uncontested; it also is not material to a charge of sex discrimination. There is no evidence that Lorin Letendre lobbied for the promotion because she was a woman, rather than based solely on his evaluation of her job performance. However, he was only in a position to make a recommendation, and his recommendation was rejected. The reason it was rejected is relevant only if it is related to plaintiff's sex, and there is no evidence to support such an inference.

Indeed, plaintiff conceded that she was denied a two level promotion because defendant has a policy and custom of promoting employees one level at a time. *See* Schaulis Deposition, v. II, p. 221.

> ("Q. Do you recall any conversation around that time in which [Letendre] reminded you or told you that CTB had a one–step–at–a–time promotion policy . . .?
>
> A. . . . I know Lorin [Letendre] described to me the fact that Gordon [Wainwright] and John Martin had a thing about promoting people one step at a time, with which Lorin did not agree and felt that, in my particular case, it

was rubbish, and that I remember his telling me at some time that he thought it was going to be very difficult, regardless of the work I had done, *et cetera*, because of Gordon's hangup about a one–step–at–a–time promotion.")

While plaintiff felt that the policy was discriminatory because, "It was directed toward me and I am a woman," Schaulis Deposition, v. II, p. 221, she was unable to point to any male who was promoted more than one level at a time.

("Q. Do you know anything else that would indicate to you that that policy of one–step promotions was applied only to women, and not to men?

A. No, I don't, at this time.")

Schaulis Deposition, v. II, pp. 223–23. Plaintiff thus must argue that her failure to receive *preferential* treatment is evidence of sex discrimination. She suggests that because her supervisor tried to get an extraordinary promotion for her, his failure must necessarily be the result of improper discrimination. However, it is axiomatic that an employer may hire, pay, and promote employees in any manner he desires, provided that no such decisions are based on improper discriminatory reasons. Neutral application of an across–the–board policy does not constitute discrimination; it constitutes equal treatment. *See Chavez, supra*, 565 F.2d at 1094–95. "Absent discrimination, the choice of personnel advancement by promotion is a matter left to the employer's best business judgment in light of all considerations." *Rogers v. McCall*, 488 F.Supp. 689, 696 (D.D.C.1980).

To conclude, the only evidence plaintiff can rely on with respect to her promotion is that she became permanent more quickly than her contemporaries, and that her supervisor tried unsuccessfully to obtain a two step salary jump for her. This can hardly be considered evidence of sex discrimination. However, even if it could be viewed in another light, plaintiff's claim would fall because she has failed to show that any employment or promotion decision was in any way influenced by the fact that plaintiff is a woman. Thus, as a matter of law, plaintiff has not established a *prima facie* case of discrimination.

*Working conditions, Harassment, Retaliation*

Plaintiff's remaining claims are a potpourri of complaints relating to working conditions at CTB. With respect to these claims as well, plaintiff has failed to state a *prima facie* case. In addition, defendant has properly rebutted any improper inferences that might be drawn, and plaintiff has not cast any substantial doubt on these assertions sufficient to defeat the motion for summary judgment.

Plaintiff contends that she was given inadequate working space and supplies, and that following her EEOC complaint, her supervisor mocked her by giving her a filing basket and telling her that her new office would be a table in the library.

■ While defendant does not contest that working conditions were inadequate, it properly emphasizes that plaintiff is unable to identify any comparable males who had better working conditions than herself. Plaintiff conceded this at her deposition.

("Q. And are you aware of any male assistant editors who received some special conditions that you were not given, like conditions, I mean working space, *et cetera*?

A. I have already testified that I am not aware of any specific man who was titled Assistant Editor, Jack, so I cannot answer that question.")

*See* Schaulis Deposition, v. II, p. 193. The best that plaintiff could state was that several men who were employed in significantly higher positions were enjoying better office arrangements. This, however, does not constitute sex discrimination. Plaintiff's contention essentially boils down to the fact that lower level employees were working under less than ideal conditions. The mere fact that some of these lower level employees were women does not convert this into discrimination. Title VII simply is not designed to provide a remedy for sex-neutral, generally poor working conditions.

Plaintiff also contends that she was subjected to continual harassment and retaliation following the filing of a charge with the EEOC.

In particular, she identifies a meeting on September 26, 1978, at which Lorin Letendre issued a general statement regarding personnel policies to those employees under his supervision. He expressed management's concern with employee "insubordination", and emphasized that management would exercise its option to terminate disruptive employees. Plaintiff contends that the remarks were directed at her, and constituted threats in retaliation for her EEOC charge.

The flaw with this contention is that the remarks of Letendre were clearly not directed to any one individual, and plaintiff certainly was not singled out for rebuke. Indeed, the record demonstrates that Saundra Schaulis and Marjorie Geesaman each left the meeting feeling that the comments had been directed at them personally. *See* Schaulis Deposition, v. II, pp. 231, 238. Letendre himself testified that Schaulis and Geesaman were each correct; his remarks had been directed toward them in part. They also were directed toward two other employees, Ashley Streetman and Alan Roberson. *See* Letendre Deposition, pp. 124–28; Letendre Declaration, pp. 2–3, ¶ 3. The fact that Letendre's comments were not specifically directed at any one identifiable employee and were not so perceived precludes a finding of retaliation. As emphasized in *Romero v. Union Pac. R. Co.*, 459 F.Supp. 741, 746–47 (D.Wyo.1978), "the question is whether the same disciplinary action would have occurred had there been no participation in statutory proceedings. If the answer is yes, the retaliation case fails." *See also Gunther v. County of Washington*, 602 F.2d 882 (9th Cir. 1979). Indeed, it is remarkable that plaintiff would argue that a statement of company policy alone, unaccompanied by any actual disciplinary action, constitutes an act of retaliation. The First Circuit has stated that . . . courts have in each case to balance the purpose of the Act to protect

persons engaging reasonably in activities opposing sexual discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel. *Hochstadt v. Worcester Foundation, etc.*, 545 F.2d 222, 231 (1st Cir. 1976). In this case, plaintiff has presented no evidence from which to sustain an inference of pretext. For that reason, and because Title VII cannot be interpreted to eliminate all management discretion in employment policies, the Letendre meeting cannot form the basis for a *prima facie* case of retaliation. An employer may fully refute a retaliation claim by demonstrating a nondiscriminatory justification for its employment decision.

Plaintiff also bases her retaliation claim on the fact that Letendre began to keep close track of her work and hours following the EEOC filing. However, plaintiff's own records demonstrate that immediately after filing her EEOC charge, her hours dropped drastically. *See* Schaulis Deposition, v. II, pp. 252–54, Exhibits 12, 16. Plaintiff has presented no evidence to show that increased managerial concern with her performance was mere pretext. The filing of an EEOC charge neither frees a complainant of work responsibilities nor prevents an employer from exercising its managerial rights. *Cintron v. Adams*, 458 F.Supp. 43, 49 (D.D.C.1978); *Blizard v. Fielding*, 454 F.Supp. 318, 325–26 (D.Mass. 1978) ("[Plaintiff] has argued that pursuit of her Title VII claims justified nonperformance of assigned duties. This argument fails. When during regular working hours an employee is so immersed in pursuing her own interests that she cannot do her job effectively, then her employer can lawfully react to the nonperformance of her work responsibilities so long as that reaction is not a pretext to cover decisions based on that employee's sex.")

Plaintiff cites as a further example of retaliation that she was reassigned from a project for which she had been scheduled to be a project director. This particular project, the "TEWS Competency Kit", was dropped from the production schedule in

June 1978, two months before plaintiff filed her EEOC charge. *See* Letendre Deposition, p. 101. The reassignment simply could not have constituted an act of retaliation for an EEOC charge that was yet to be filed.

Plaintiff's charge that she "was subjected to an outburst of screaming and profanity from Gordon Wainwright . . . when she complained about her situation after the EEOC charge," Memorandum in Opposition, p. 17, similarly cannot form the basis for a charge of retaliation. Plaintiff testified at her deposition that the display of temper occurred sometime in the second week of July 1978. *See* Schaulis Deposition, v. II, p. 96. The argument resulted from Wainwright's belief that plaintiff's demands for a two step promotion were irrational and unjustified. Defendant concedes that the event took place; Wainwright sent plaintiff a letter of apology on August 31, 1978. The letter followed the EEOC charge; the incident preceded it.

Finally, plaintiff cites as a retaliation the fact that she was given a filing basket and told that she would be working at a desk in the library. The Declaration of Lorin Letendre establishes that the filing basket was the only part of plaintiff's request for better office equipment that could be satisfied immediately. He states that he told her that he would attempt to meet her requests for a typewriter, file cabinet, etc., through budgetary requests the next year. With respect to the library space, he claims that he advised plaintiff that the library was scheduled to be converted into office space with semi-private offices for plaintiff and other editors, and further affirms that the conversion of the library space has actually now been accomplished. *See* Letendre Declaration, pp. 1–2, ¶ 2. Plaintiff has identified no evidence to support an inference that this good faith effort to accommodate her requests was actually retaliation or pretextual sex discrimination.

To conclude, plaintiff's charges of harassment and retaliation are completely devoid of any support in the record. The Ninth Circuit has held:

In order to establish a *prima facie* violation of [Section 704(a), 42 U.S.C. § 2000e–3, forbidding retaliation], the plaintiffs must show more than that they protested practices contrary to Title VII and that they were subjected to adverse action by their employer. *Miller v. Williams*, 590 F.2d 317, 320 (9th Cir. 1979). The plaintiffs must also make a showing that links their conduct with the employer's action.

*Gunther, supra*, 602 F.2d at 892. Plaintiff has failed to show any relationship between the filing of the EEOC charge and any actions taken against her. Indeed, it is hard to perceive what, if any, actions were taken "against" plaintiff. She has not stated a *prima facie* case of retaliation or harassment constituting sex discrimination. *See, e. g., Rogers v. McCall, supra*, 488 F.Supp. at 697–99.

Because plaintiff has been unable to identify any evidence in support of her claim of harassment and retaliation, her charge of constructive discharge must fall as well. Plaintiff contends that she resigned because she heard "the sound of closing doors in my face." *See* Memorandum in Opposition, p. 19. As discussed above, plaintiff's working conditions may have been far from ideal. However, she has presented no evidence from which to deduce that "the employer deliberately [made] an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Young v. Southwestern Savings and Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975). *See also Thompson v. McDonnell Douglas Corp.*, 416 F.Supp. 972, 983–83 (E.D.Mo.1976), *aff'd*, 552 F.2d 220 (8th Cir. 1977). An employer has not effected a constructive discharge merely because an employee believes that she has lost respect or credibility within the company or that she has limited opportunities for advancement, and plaintiff's assertion amounts to no more than such beliefs. *See* Memorandum in Opposition, p. 18.

*Motion to Amend Complaint and to Intervene; Motion to Dismiss Class Claims*

On the verge of reargument of the motion for summary judgment, plaintiff filed

a motion to amend the complaint to allow two additional plaintiffs to intervene individually and as class representatives. The Court recognizes that amendment of complaints and intervention should be granted liberally. F.R.Civ.P. 15, 24. However, the Court has concluded that it must deny the motion for two reasons: (1) it is untimely, and (2) neither of the proposed intervenors has met the jurisdictional prerequisites to the filing of a Title VII lawsuit. In addition, the Court has determined that the class claims must be dismissed at this time.

█ It would be highly prejudicial to defendant to permit two additional plaintiffs to enter the lawsuit at this juncture. There has been substantial discovery in this action. An extensively briefed and documented motion for summary judgment has been argued and submitted. Defendant had every reason to believe that if the motion were granted, the lawsuit would be terminated; similarly, defendant had every reason to believe that if the motion were denied, the case would promptly go to trial on plaintiff Schaulis' individual claim and that this issue would be resolved. To allow the proposed intervention would necessitate the reopening of discovery, and would necessarily have delayed any trial. Of course, the Court also is mindful that it would be highly unusual, from both a procedural and a substantive context, to allow amendment and intervention following the granting of summary judgment against the only named plaintiff at the time of the motion.

█ More significant, however, is the Court's conclusion that neither Sherrill nor Alders, the proposed intervenors, have met the jurisdictional prerequisites to the filing of a Title VII suit. This Court does not acquire jurisdiction over a Title VII claim until the plaintiff has filed an EEOC charge and received a right–to–sue letter. Alders filed her EEOC charge on June 5, 1980. She cannot receive a right–to–sue letter until 180 days have passed from the filing of the charge. 29 C.F.R. § 1601.28(a)(2). Sherrill has yet to file a charge. The Supreme Court has made clear that filing an EEOC charge and receiving a right–to–sue letter are jurisdictional prerequisites to instituting a lawsuit, not simply administrative procedures that must be followed pursuant to the familiar exhaustion doctrine.

[Title VII] specifies with precision the jurisdictional prerequisites that an individual must satisfy before he is entitled to institute a lawsuit. In the present case, these prerequisites were met when petitioner (1) filed timely a charge of employment discrimination with the Commission, and (2) received and acted upon the Commission's statutory notice of the right to sue.

*Alexander v. Gardner–Denver Company,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). The court in *Gardner–Denver* emphasized that the filing requirement was designed to encourage prompt settlement of claims on a voluntary basis.

Cooperation and voluntary compliance were selected as the preferred means for achieving this goal [of assuring equality of employment practices]. To this end, Congress created the Equal Employment Opportunity Commission and established a procedure whereby existing state and local equal employment opportunity agencies, as well as the Commission, would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit.

*Id.* at 44, 94 S.Ct. at 1017. In this case, if Sherrill's and Alder's individual claims are allowed to bootstrap onto this suit at this late date, defendant will be denied the opportunity to conciliate their claims, and the administrative process selected by Congress will be rendered meaningless. This Court is not prepared to permit such a clear evasion of Congressional intent. *See Budreck v. Crocker Nat. Bank,* 407 F.Supp. 635 (N.D. Cal.1976).

Needless to say, both Sherrill and Alders will be entitled to pursue their remedies in this court if they are unable to obtain satisfactory relief in the administrative context. However, contrary to the assertion that it would conserve judicial resources to allow the proposed intervenors to proceed at this

time in this forum, it would be more prudential to require them initially to seek the conciliation efforts of the EEOC, and perhaps thus to avoid litigation entirely.

It is unnecessary to devote extensive analysis to the cases cited by plaintiffs in support of their claim that persons who have not received a right–to–sue letter may represent a class in a Title VII action. *Oatis v. Crown Zellerbach Corporation*, 398 F.2d 496 (5th Cir. 1968); *Inda v. United Air Lines, Inc.*, 83 F.R.D. 1 (N.D.Cal.1979); *Marin Cty. Ch. of N.O.W. v. Marin Cty.*, 82 F.R.D. 605 (N.D.Cal.1979).

In *Oatis*, the Court held that "it is not necessary that members of the class bring a charge with the EEOC as a prerequisite to joining as co–plaintiffs in the litigation. It is sufficient that they are in a class and assert the same or some of the issues." 398 F.2d at 499. The Court did hold, however, that one of the named plaintiffs must have filed an EEOC charge and received a right–to–sue letter. In *Marin Cty.*, Judge Zirpoli held that a person may be a member of a class where the named class representative did file a charge "and such a person may even be a representative plaintiff so long as one or more of the named plaintiffs did file a timely charge." 82 F.R.D. at 606. *But see Jacobs v. Sea–Land Service, Inc.*, 23 EPD ¶ 30,907 at 15,698 (N.D.Cal.1980) ("The Court reads [*Inda v. United Air Lines, Inc.*, 565 F.2d 554 (9th Cir. 1977)] to mean that *representative plaintiffs* must have met the *jurisdictional* requirements of Title VII before they can maintain a suit.")

In this case, only plaintiff Schaulis filed a charge with the EEOC. Only plaintiff Schaulis has met the jurisdictional prerequisites to filing suit. The Court concurs with the cited cases to the extent that class members are not required to file EEOC claims before they become entitled to share in any class–wide relief. *See Jacobs, supra*, at 15,698. However, each of these cases presumes that the named plaintiff who has met the jurisdictional prerequisites has a claim that remains viable when the non–filing class members seek to intervene in the suit. This Court is unaware of any case which has permitted intervention when summary judgment has been awarded against the only plaintiff who was entitled to file suit in the first instance.

Finally, the Court notes that Judge Williams' recent opinion in *Inda, supra*, 83 F.R.D. 1, addresses an issue totally unrelated to this motion to intervene. In *Inda*, the question was largely the definition of the litigating class and the potential time limitation on relief for class members who had filed EEOC charges *prior* to those brought by the class representatives. In contrast, in this case we are confronted with the question of whether later filing or non–filing class members may intervene successfully in the defunct suit of an earlier filing class representative.

This issue is complicated further by the fact that plaintiff failed to bring a motion for class certification at any time prior to the filing of the motion for summary judgment. Local Rule 200–6(c) requires the plaintiff in a class action to file a certification motion within six months after the suit is instituted. This rule is designed to facilitate the proper management of class actions, and also to require the prompt resolution of a crucial issue in a lawsuit. Following the early class determination, purported class members will either receive notice and an opportunity to opt out or to intervene, or at least will not be led astray by rumors that their interests will be protected in the class action. If the motion is denied, individual class members who may have grievances will be in a position to institute their own actions if they so choose.

As noted above, plaintiff Schaulis was the only potential class representative in this suit. No other woman had filed an EEOC claim at the time she brought suit. Therefore, none of the purported class members were in a position to join this suit *prior* to certification.

However, there has never been a motion for certification, and this Court has now determined that Ms. Schaulis' individual claim must be denied. For that reason, this Court must dismiss the class claims as well. In *East Texas Motor Freight System, Inc.*

*v. Rodriguez,* 431 U.S. 395, 403–4, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977), the Court held:

> The District Court found upon abundant evidence that these plaintiffs lacked the qualifications to be hired as line drivers. Thus, they could have suffered no injury as a result of the alleged discriminatory practices, and they were, therefore simply not eligible to represent a class of persons who did allegedly suffer injury.

That decision compels dismissal of the class claims because plaintiff simply is not a member of that class of persons who have been wronged by the conduct of defendant, and consequently cannot properly represent any such class. F.R.Civ.P. 23(a).

The Supreme Court recognized in *East Texas Motor Freight* that a different result might flow if a class had been certified prior to the unsuccessful litigation of the named plaintiffs' claims.

> Obviously, a different case would be presented if the District Court had certified a class and only later had it appeared that the named plaintiffs were not class members or were otherwise inappropriate class representatives. In such a case, the class claims would have already been tried, and, provided the initial certification was proper and decertification not appropriate, the claims of the class members would not need to be mooted or destroyed because subsequent events or the proof at trial had undermined the named plaintiffs' individual claims.

*Id.* at 406 n. 12, 97 S.Ct. at 1898. Indeed, it is quite conceivable that class claims would succeed even though the representative plaintiffs had failed to prove their individual claims.

The Supreme Court held this past term in *United States Parole Commission v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), that a class action does not become moot when a motion for class certification has been wrongfully denied and the individual plaintiff's claim became moot pending appeal. The Court held that such a plaintiff was a proper class representative for the limited purpose of appealing the certification motion. The Court held, "[A]n action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied. The proposed representative retains a 'personal stake' in obtaining class certification sufficient to assure that Art. III values are not undermined." *Id.,* 100 S.Ct. at 1212. *Geraghty* thus does not represent a departure from *East Texas Motor Freight* where, as here, despite the class allegations in the complaint, no class certification had been sought by the plaintiffs. *See East Texas Motor Freight, supra,* 431 U.S. at 399–400, 97 S.Ct. at 1894–1895.

*East Texas Motor Freight* was concerned largely with Rule 23 considerations and the qualifications of proper class representatives. Following this decision, Judge Renfrew held that a named plaintiff whose individual claim has been rejected prior to certification can never be an adequate representative in a Title VII case.

> Logic as well as authority dictate this result. To permit a plaintiff to assert the claims of a class of which he is not a part and to seek relief in which he has no concrete individual interest is to sanction a sham class action and to abandon any substantial role for the named plaintiff himself, as distinguished from his attorney.

*Wofford v. Safeway Stores, Inc.,* 78 F.R.D. 460, 477 (N.D.Cal.1978). *East Texas Motor Freight* clearly mandates this conclusion. To the extent that it is apposite, *Geraghty* suggests that a contrary result not only would offend the requirements of Rule 23, but more significantly, would raise substantial constitutional doubt flowing from the "case or controversy" requirement of Article III, Section 2 of the Constitution.

For these reasons, the motions to amend and to intervene must be denied, and the class claims must be dismissed.

*Costs*

 Defendant has moved for reconsideration of this Court's denial of costs to the prevailing party.

Rule 54(d), F.R.Civ.P., provides in relevant part:

Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs.

There is no question that costs normally are awarded to the prevailing party in litigation. However, the district court, by the words of the rule itself, retains discretion in determining whether or not to award costs. *Chavez v. Tempe U. High Sch. Dist., supra,* 565 F.2d 1087, 1095. The Ninth Circuit has held:

> [T]he awarding of these costs is discretionary with the trial judge, 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2608, at 795 (1971); C. Wright, *Law of Federal Courts* § 98, at 438 (2d ed. 1970); 6 J. Moore, *Federal Practice* ¶ 54.70[5], at 1312 (2d ed. 1974), and we will not overturn his decision unless it has been abused.

*K–2 Ski Company v. Head Ski Co., Inc.,* 506 F.2d 471, 476–77 (9th Cir. 1974). The Court is mindful also of the Seventh Circuit's apt analysis of Rule 54(d):

> The mere fact that the unsuccessful party was an ordinary party acting in good faith and neither harassing its opponent nor abusing legal process is not sufficient to overcome the presumption that the prevailing party is entitled to costs. There exists another presumption, and that is that the parties on both sides of a cause are acting honestly and ethically. That the losing party is in fact what he is presumed to be and is in fact conducting himself as he is expected and required to conduct himself, does not create any equities defeating the presumption that the prevailing party collect the costs due him "as of course". If the awarding of costs could be thwarted every time the unsuccessful party is a normal, average party and not a knave, Rule 54(d) would have little substance remaining.

*Popeil Brothers, Inc. v. Schick Electric, Inc.,* 516 F.2d 772, 776 (7th Cir. 1975). At the same time, that court recognized that there is no requirement that "landmark issues of national importance must be at stake to avoid the usual rule.' *Id.* at 776. *See also Chicago Sugar Co. v. American Sugar Refining Co.,* 176 F.2d 1, 11 (7th Cir. 1949), *cert. denied,* 338 U.S. 948, 70 S.Ct. 486, 94 L.Ed. 584 (1950). Judge Weinstein similarly has held that "good faith litigation does not absolve a party from imposition of costs." He did note however, "Indigency is a proper ground for denying costs in cases where there is a wide disparity of economic resources between the parties." *Maldonado v. Parasole,* 66 F.R.D. 388, 390 (S.D.N.Y. 1975). In that case he approved the awarding of costs to a successful defendant when both plaintiff and defendant were equally indigent, and "plaintiff [had] rejected a settlement which would have provided him with a cash payment causing defendant's family severe hardship were it paid because defendant had no assets." *Id.* at 390–91.

This Court concurs in Judge Learned Hand's wry observation: "After now some dozen years of experience I must say that as a litigant I should dread a lawsuit beyond almost anything else short of sickness and death." Address of Learned Hand, 3 Association of the Bar of the City of New York, Lectures on Legal Topics, 105 (1926), *cited in Farmer v. Arabian American Oil Co.,* 379 U.S. 227, 239, 85 S.Ct. 411, 418, 13 L.Ed.2d 248 (1964) (Goldberg, J., concurring). The Court will not award costs to defendant here. To approve the cost bill proposed by defendant in the amount of approximately $1400 would lead to a harsh result when plaintiff is an individual litigant and defendant is a large corporation. This case has been vigorously litigated, and this Court concludes that it would place an undue burden to tax costs against plaintiff. To do so in this context could only chill individual litigants of modest means seeking to vindicate their individual and class rights under the civil rights laws.

*Conclusion*

While this Court strongly believes that most litigation should be resolved in trial, defendant here has persuasively demonstrated that it is entitled to entry of summary judgment. In the voluminous record before the Court, there appears to be no

genuine issue as to any material fact. The defendant's motion for summary judgment is granted.

The motions to amend the complaint and to intervene are denied.

The motion to dismiss the class claims is granted.

The motion for reconsideration of the denial of costs is denied.