**Karen COULTER, Plaintiff,**

v.

**NEWMONT GOLD COMPANY, Defendant.**

**No. CV–N–91–508–ECR.**

United States District Court, D. Nevada.

Nov. 23, 1994.

Karen Coulter, in pro per, and Easterly & Armstrong by Eric G. Easterly, Elko, NV, for plaintiff.

Raymond M. Deeny and Glenn H. Schlabs, Colorado Springs, CO, and Margaret Crowley of Hill, Cassas & deLipkau, Reno, NV, for defendant.

EDWARD C. REED, Jr., Senior District Judge.

Coulter brought suit under Title VII. She lost, and, over objection, was taxed costs of $6,720.58 by the clerk on September 27, 1994, (Doc. # 77) pursuant to 28 U.S.C. § 1920, F.R.Civ.P. 54(d), and Local Rule 205–1. Coulter has made a motion to retax costs (Doc. # 79), asking this court to review the clerk's decision. A motion to retax is authorized by Rule 54(d) and Local Rule 205–16, and is to be "decided upon the same papers and evidence [as were] submitted to the clerk." Local Rule 205–16(b).

The following costs were taxed by the Clerk: $152.50 for service of summonses and subpoenas; $1,574.75 for deposition transcripts; $4,383.68 for witness expenses; and $609.65 for exemplification (i.e., copying costs). Each of these costs is clearly taxable under, respectively, Local Rules 205–2, –4, –5, and –6. On the general subject of costs taxable in this district, see *Gorelangton v. City of Reno,* 638 F.Supp. 1426 (D.Nev.1986); *Women's Fed. Sav. & Loan Ass'n of Cleveland v. Nevada Nat'l Bank,* 108 F.R.D. 396 (D.Nev.1985); and *Horning v. County of Washoe,* 622 F.Supp. 782 (D.Nev.1985).

Coulter's argument is contained in her objections to Newmont's bill of costs, which she originally lodged with the Clerk. (Doc. #75.) First, she objects to the charge for deposition transcripts because, she claims, that charge included the price of copies, whereas Local Rule 205-4 allows only for the cost of the original deposition and expressly forbids taxation of the cost of counsel's copies. In an affidavit attached to Newmont's reply, however, the reporter made clear that the charge included only the cost of the original deposition, that a copy had been provided free of charge, and that the cost would therefore have been the same had a copy of the deposition transcripts not been provided. (Doc. #76, Aff. of Doreen Jensen.) In short, the reporter did not charge for the copies and Coulter was not taxed for their cost; that is an adequate answer to her objection.

■ Second, Coulter objects to the witness fees and expenses allowed, pursuant to Local Rule 205-5, for Larry Karstens and Dean Plazak, on the ground that each witness's testimony was unnecessary, not particularly helpful to the defense, and unreasonably expensive in light of its limited probative value. She does not specify what particular aspect of each witness's expenses she finds unreasonably expensive. Each witness testified, and each one's testimony was useful. That a witness's testimony appears, in hindsight, not to have been absolutely essential to the prevailing party's case, is no basis for denying recovery by that party of costs related to that witness's testimony.

In short, neither of Coulter's specific objections has merit. She does, however, make another, more general objection: she argues that costs should not be taxed because she simply doesn't have the money to pay. In an affidavit, she briefly outlines her financial situation: she has no savings, no insurance, no car, and is employed once per week as a housekeeper and occasionally as a substitute cook for the local schools; she owes $6,000 on her credit card and $1,500 in medical bills, and is obligated on a $4,500 loan taken out to finance her son's attendance at the University of Nevada; her assets consist of twenty acres of land in Montana, for which she paid $2,700 in 1971, and $31,500 equity in a thirty year-old trailer and lot in Elko, Nevada.

■ Newmont prevailed in this case, and "[c]osts are awarded to the prevailing party in civil actions as a matter of course ..." *NOW v. Bank of California*, 680 F.2d 1291, 1294 (9th Cir.1982); *see generally* Laura B. Bartell, *Taxation of Costs and Awards of Expenses in Federal Court*, 101 F.R.D. 553 (1984) (collecting cases). This is so even if—unlike Coulter—the losing plaintiff proceeded *in forma pauperis, see Papas v. Hanlon*, 849 F.2d 702, 703–04 (1st Cir.1988); *see also Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir.1994) (dictum; Rule 11 sanctions were at issue), and even though the *in forma pauperis* plaintiff sued under Title VII. *See Washington v. Patlis*, 916 F.2d 1036, 1040 (5th Cir.1990).

■ Again, that is the presumption. The burden is on the losing party seeking to avoid taxation of costs to overcome it, and the district court can depart from it only with a statement of reasons. *See* Bartell, *Taxation of Costs*, 101 F.R.D. at 560. Still, "the district court, by the words of the rule itself, retains discretion in determining whether or not to award costs." *Schaulis v. CTB/McGraw–Hill, Inc.*, 496 F.Supp. 666, 680 (N.D.Cal.1980); *see generally* 10 Charles A. Wright, Arthur R. Miller & Frank W. Elliott, *Federal Practice and Procedure* § 2668 (2nd Ed.1983 & Supp.1994). In deciding whether to award costs (and if so, in what amount), it may "consider the limited resources of a Title VII plaintiff." *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 486 (9th Cir.1983) (*citing NOW*, 680 F.2d at 1294 (consideration of plaintiffs' "limited budgets" not improper)).

So, for example, in *Schaulis* Judge Ingram declined to award costs to a prevailing Title VII defendant because the bill "would lead to a harsh result when the plaintiff is an individual litigant and the defendant is a large corporation," the case was "vigorously litigated," and taxing costs would "only chill individual litigants of modest means seeking to vindicate their ... rights under the civil rights laws." *Schaulis*, 496 F.Supp. at 680. Similarly, in *Braxton v. United Parcel Service, Inc.*, a "vigorously litigated" case in

which the defendant prevailed against a claim of racial discrimination, the court noted that it

> need not award costs if it finds that such an award would be 'inequitable.' . . . . Equitable factors in such cases do not readily lend themselves to formulae, and thus courts can be forgiven for sometimes lapsing into circular generalizations in deciding issues like this. . . . The inequity we seek to avoid here stems from the disparity of resources. Braxton is an individual plaintiff of modest means who has pursued a legitimate claim in good faith, but who under the Clerk's order would be required to shoulder not only his own substantial litigation expenses but also the litigation costs of his large and wealthy adversaries. . . . Apart from our concern regarding the inherent injustice of taxing costs to plaintiffs with few resources who have pursued claims in good faith, we are also troubled by the distinct possibility that the 'fear of [our] imposition of astronomical costs' will become 'a deterrent against the assertion of legitimate disputes,' . . . and will 'chill individual litigants of modest means seeking to vindicate their . . . rights.'

*Braxton v. United Parcel Service, Inc.*, 148 F.R.D. 527, 528–29 (E.D.Pa.1993) (citations omitted) (footnotes omitted). *See also Reagan v. Bankers Trust Co.*, 863 F.Supp. 1511, 1521 (D.Utah 1994) (economic disparity between the parties can be considered); *Ezold v. Wolf, Block, Schorr and Solis–Cohen*, 157 F.R.D. 13 (E.D.Pa.1994) (same); *Williams v. Hevi–Duty Elec. Co.*, 122 F.R.D. 206, 214 (M.D.Tenn.1988) (opining, *inter alia*, that the losing party's inability to pay costs can be considered in deciding what costs should be awarded); *cf. Martin v. Frontier Fed. Sav. & Loan Ass'n*, 510 F.Supp. 1062 (W.D.Okl. 1981).

■ It should be kept in mind, moreover, that a plaintiff need not be utterly indigent to merit some relief from taxation of costs in this context. *See Braxton*, 148 F.R.D. at 528 n. 2 & 529 ("[a]lthough the losing party is indigent in most cases in which courts take the losing party's ability to pay into consideration, these cases also typically involve much smaller sums than the $16,805.79 at issue here," and "since Braxton is not indigent, justice does not seem to us to require that costs be denied altogether. We seek, rather, a level that is equitable").

■ Turning, then, to the facts of this case. There is, unfortunately, no clearly defined test or set of factors to consider in determining whether to award something less than full costs. Like the *Braxton* court, we seek an equitable level. The following factors, we think, merit consideration and the award of less than full costs.

■ First, Coulter is not indigent, but imposition of full costs in this case (nearly $7,000) would be a severe hardship. She could, presumably, come up with the necessary cash, but only by selling her trailer (or putting something like a second mortgage on it, if that is possible).

Second, there is a great disparity in financial resources between the parties. Newmont will not be financially crippled by a failure to award full costs in this case; Coulter will be crippled if full costs are awarded.

Third, this was a Title VII case. As such, it involved not merely private grievances between the parties, but also significant public values (in a way that, for example, a contract or tort case in this court under diversity jurisdiction would not). It is appropriate that the threat of having to pay the other side's costs should give a potential plaintiff pause before he or she files any type of suit. But it is also proper, given the importance of the values implicit in Title VII, that plaintiffs with meritorious cases not be unduly intimidated by the threat of imposition of massive costs.

Finally, and most important, Coulter's case had substantial merit. Her case foundered for lack of a showing of proximate cause, but this court specifically found that she had shown the existence of a "hostile working environment."

It must be emphasized that the court's decision is a narrow one, based on the facts of this case. The strong presumption must be in favor of an award of full costs to the prevailing party, and each of the factors list-

ed above is important in the court's decision to award only partial costs. If Coulter could pay full costs without very substantial hardship, then full costs would be awarded. If Newmont were in roughly the same financial position as Coulter, so that a failure to award full costs would harm it as much as imposition of full costs would harm Coulter, then full costs would be awarded. If this were a different type of case, one not involving significant public policy concerns, full costs would be awarded. And although Coulter's case was brought in good faith, full costs would be awarded if it had not *also* been substantially meritorious.

For the reasons stated above, it is **HEREBY ORDERED** that the Clerk's taxation of costs (Doc. # 77) is **VACATED.** Coulter's Motion to Retax Costs (Doc. # 79) is **GRANTED,** and costs are taxed against Coulter in the amount of $4,200.00.