On remand, the magistrate judge must first determine in which category each of the assessed costs falls.   After imposing liability on Singleton for any costs found to be in the third category, the magistrate must then allow Singleton an opportunity to prove that he will be unable to pay the costs found to be in the first and second category.  If this showing warrants relief from those costs subject to challenge, the costs should be reduced or eliminated from the total assessed against the appellant.

### III

The award of costs against Singleton is AFFIRMED.  However, because Singleton may challenge at least part of this award on the grounds of inability to pay, we REMAND for further proceedings not inconsistent with this opinion.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0058P (6th Cir.)
File Name:  01a0058p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ALPHONSO SINGLETON,
     *Plaintiff-Appellant,*

     *v.*

LEE EDWARD SMITH and ERIC ROSS,
     *Defendants-Appellees.*

No. 99-3421

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 94-00850—Edmund A. Sargus, Jr., District Judge.

Argued:  November 3, 2000

Decided and Filed:  March 2, 2001

Before:  KEITH, BOGGS, and COLE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**   David A. Goldberger, ACLU OF OHIO FOUNDATION, INC., Columbus, Ohio, for Appellant.  J. Eric Holloway, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellees.  **ON BRIEF:** David A. Goldberger, ACLU OF OHIO FOUNDATION, INC., Columbus, Ohio, Anne M.

Doyle, OHIO STATE UNIVERSITY COLLEGE OF LAW CLINICAL PROGRAMS, Columbus, Ohio, for Appellant. Joshua T. Cox, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellees.

————————

**OPINION**

————————

BOGGS, Circuit Judge.  Following a negative jury verdict in his civil trial, costs were imposed against appellant Singleton pursuant to the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(f).  Singleton appeals an order that denied  him relief from costs of $3857.35, arguing that imposition of the costs was a misapplication of the PLRA and interpretive case law.  In the alternative, he argues that such an application would be an unconstitutional burden on his access to the courts.  In the second alternative, he claims that use of this provision of the PLRA would be impermissibly retroactive, as his case was filed prior to the effective date of the statute.  Singleton seeks to have the judgment of costs reversed on grounds of legal error or the unconstitutionality of the relevant provisions of the PLRA.  Alternatively, if his retroactivity claim succeeds, he seeks a remand for assessment of possible relief based on indigency in accordance with now-superseded procedures outlined in *Weaver v. Toombs*, 948 F.2d 1004, 1014 (6th Cir. 1991). We find Singleton's retroactivity claim to have merit and remand for further proceedings.

**I**

The merits of Singleton's complaint are not at issue here, but may be useful for context.  Singleton, an Ohio prisoner, is a diagnosed asthmatic who was incarcerated in the Correctional Reception Center in Orient, Ohio  in 1994. He claimed to have requested a nonsmoking environment and been denied it.  Indeed, he said the defendants, who are corrections sergeants, told other inmates to "smoke him out"

The PLRA was meant to regulate Singleton's litigation behavior.  In particular, the provisions on costs and fees were meant to alter his economic incentives to take legal actions. When he took such actions, Singleton had settled expectations about his ultimate liability for the entailed costs.  These expectations would be upset by the retroactive elimination of a *Weaver* challenge, and following the guide of *Landgraf* and *Martin*, Singleton should be protected as to the legal effect of the actions he took.  Therefore, it would be impermissibly retroactive to eliminate a *Weaver* challenge to costs that relate to "events completed" prior to March 1, 1997.

The remaining ambiguity has to do with when "events were completed" or "expectations became settled" with regard to one or all of the costs in this case.  Unlike with the fee-seeking attorneys in *Martin*, the creation of the costs here was not under complete control of the individual being regulated by the new rule.  Logically, for the purposes of retroactive application, an event would be "completed" when Singleton took an action that made the other party's cost inevitable. The costs in this case may be divided into three categories.  In the first category would be those costs incurred by defendants prior to the PLRA, which for purposes of this question has the effective date of March 1, 1997.  The costs of deposing Singleton fall into this category.  In the second category would be costs incurred by the defendants after the PLRA, but made necessary by actions taken by Singleton (such as noticing witnesses) prior to the PLRA.  The third category would consist of costs made necessary and incurred only after the PLRA.  The provisions of the PLRA compelling payment in full may only be permissibly applied to the costs in the third category.  Appellant is fully responsible for costs determined to be in the third category.  Singleton may challenge, under *Weaver*, those costs determined to be in the first or second category.  *Weaver* directed that post-taxation challenges be heard before the judicial officer who originally allowed the plaintiff to proceed in forma pauperis. 948 F.2d at 1014.  Singleton was granted IFP status on September 2, 1994 by order of Magistrate Judge Mark Abel, who is now the proper officer to adjudicate Singleton's challenge.

continuing ability to withdraw if they thought they would not be paid enough under the new rules. *See* 527 U.S. at 361-62.

*Martin* protected the settled expectations of attorneys regarding the benefits of filing a prisoner suit, and there appears to be no reason not to protect the expectations of the litigant himself. Although Singleton was always liable for his costs, until March 1997 *Weaver* provided a backstop that would probably have prevented him from being subject to a post-incarceration debt immediately payable. The first cost currently assessed against Singleton is for defendants' deposition of him months before the PLRA became effective.

Persuasive authority varies on retroactive applications of the PLRA's prevailing-party cost provisions. In an unpublished decision, a panel of this court held that the new method for paying costs imposed by the court "merely establishes a procedure," and it thereby upheld $7980 in costs despite the fact that the complaint had been filed four years prior to the PLRA. *See Sanders v. Seabold*, No. 98-5470, 1999 WL 644376 (6th Cir. Aug. 13, 1999) (unpublished). However, one of our district court decisions prior to *Sanders* held to the opposite effect – "the Sixth Circuit's recent administrative order does contain indications that the Sixth Circuit would hold that in cases filed prior to the enactment of the PLRA, pre-PLRA standards should be applied in determining whether to relieve a prisoner litigant of otherwise taxable costs on the basis of indigency." *Wilcox v. Straub*, No. 95-725, 1997 U.S. Dist. Lexis 10746, *2 (W.D. Mich. Jun. 24, 1997) (referring to *In re PLRA*). The *Sanders* opinion was handed down only shortly after the Supreme Court's opinion in *Martin*, and makes no reference to it, or to its renewed emphasis that procedural label is not enough to insulate new rules -- specifically, PLRA rules -- from a retroactivity inquiry. *See* 527 U.S. at 359. Nor did *Sanders*, unlike *Wilcox*, analyze our instructions in *In re PLRA*, which marked the actual demise of the *Weaver* procedure. Moreover, because the complaint in *Sanders* was deemed frivolous, there were multiple grounds on which to impose costs on the plaintiff.

because he was "an asshole." Singleton claimed that his asthma was worsened as a result of the cigarette smoke to which he was exposed by defendants' alleged acts of commission and omission. In 1994, Singleton filed a civil rights claim under 42 U.S.C. § 1983, claiming deliberate indifference sufficient to constitute a violation of the Eighth Amendment. Summary judgment for defendants was denied and, following much wrangling, the case proceeded to trial in March 1998. Directed verdict motions were also denied and the case proceeded to a jury, which, following deliberation, ruled against Singleton. Smith and Ross then moved to recover from the appellant the costs they had incurred for the depositions taken from Singleton and his witnesses, and for the depositions taken from the defendants and their medical expert. The PLRA was held to govern the imposition of the costs, which were taxed against Singleton. The State of Ohio, which defended the action against the corrections sergeants, stands to receive the award.

Specifically, costs were assessed for: (1) the defendants' deposition of the plaintiff-appellant on January 31, 1996; (2) the defendants' depositions of the defendants-appellees on November 14, 1997; (3) the defendants' depositions of four inmates on January 1, 1998; (4) the defendants' depositions of two other inmates on February 13, 1998; (5) the defendants' deposition of Singleton's medical expert on February 19, 1998; and (6) defendants' two depositions (one a video deposition) of their own medical expert on March 2, 1998. Singleton does not challenge the necessity of these costs or present legal challenges to any of them individually.

These depositions began after Judge Beckwith (then handling the case) denied a defense motion to reconsider the magistrate judge's report and recommendation denying summary judgment. This occurred on January 11, 1996 and was followed by an order to file a written statement on readiness to proceed to trial (January 16, 1996). Singleton's deposition was noticed to the court the next day and taken two weeks later. The depositions of the corrections officers were not noticed.

When Singleton identified his witnesses is not apparent in all cases from the record before us. In a notice filed January 25, 1996, he identified Timothy Slone (deposed on 2/13/98) and also mentioned his writ writer, Darryl Blankenship (deposed 1/1/98). In a notice filed on June 6, 1996, Singleton identified Troy Harshey (deposed 2/13/98), Slone again, and his old cell mate Howard Boddie, Jr. (deposed 1/1/98).

At the conclusion of the trial, the defendant presented a Bill of Costs for $6263.39. The clerk of the court disallowed some costs, and assessed Singleton $4339.75. On plaintiff's motion to re-tax costs, the trial judge apparently was willing to consider indigency as a factor favoring denial of costs. The judge noted, however, that pursuant to his interpretation of our rule in *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999), any award would not be subsequently challengeable on the basis of inability to pay. After considering several factors and disallowing one of the clerk's assessments as unauthorized, he awarded $3857.35 to the defendants. Singleton's complaints are not directed at the particular calculations that led to this figure but attack the equitable, statutory, and constitutional grounds for taxing him with so large a sum.

Singleton is an indigent (a fact not disputed by defendants) who was granted in forma pauperis status to file his suit. His average monthly balance in his prison account in the months up to his filing was $21.18. Singleton is serving a 15-to-75-year sentence.

## II

*Standard of Review*

We review a district court's award of costs for an abuse of discretion. *Jones v. Continental Corp.*, 789 F.2d 1225, 1233 (6th Cir. 1986). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996) (upholding the award of attorney's fees).

of the prisoner's capacity to pay the costs assessed. However, the statute has superseded *Weaver*." *In re PLRA*, 105 F.3d at 1135 (citation omitted). In this order, we clearly saw the *Weaver* procedure as consisting of two phases, assessment and then further "determination." *In re PLRA* did nothing to challenge (or to change) discretionary assessment, but it eliminated the *Weaver* procedure for "determination." Hence, our later statement in *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999), that the "prisoner's ability to pay the costs is no longer an issue," properly refers to elimination of this post-assessment challenge – indigency still could be (and was for Singleton) "an issue" for the exercise of trial court discretion.

Also in our administrative order, we required plaintiffs as of March 1, 1997 to file a form that would waive objection to "fee assessment" by the trial court, and waive objection to "the withdrawal of funds from the trust account by prison officials to pay the prisoner's court fees and costs." *In re PLRA*, 105 F.3d at 1132. Taken with the foregoing then, it would seem that it is this order that represents the "new rule" that should be assessed for retroactive effect, namely, whether the elimination of the post-assessment challenge to taxation of costs, based on ability to pay, attached new legal consequences to events that had already occurred by March 1, 1997 in Singleton's case.[3]

The Supreme Court's analysis in *Martin* is instructive in resolving this case. There, successful plaintiffs sought to avoid the PLRA's limits on attorney fees in a situation in which some of the work had occurred prior to the PLRA and some after (the case had been filed many years prior to the PLRA, but the bill of costs had been submitted after the PLRA). The Court ruled that the PLRA limits did not apply to work done ("events completed") prior to the PLRA, but did apply to work done after the PLRA, since the attorneys had a

---

[3] Arguably, litigants should have been on notice from the date of this order, February 4. However, since the order has another date, March 1, on which it was intended to be effective, this governs.

of fair notice, reasonable reliance, and settled expectations.'" *Id.* at 358 (quoting *Landgraf*, 511 U.S. at 270).

If there had been no PLRA, or if Singleton's case had proceeded as originally scheduled in October 1995, his action would have been covered by the procedures in *Weaver*, 948 F.2d at 1014, which was also the state of the law when he filed his action. Presuming that Singleton would have lost at the jury level, the trial court would have been in an equivalent position afterwards to assess costs against him, despite his indigency and in forma pauperis status. *Ibid.* However, *Weaver* then stated that such assessments would be "subject to a prompt challenge and showing by such prisoner-plaintiffs that they are incapable, as a practical matter and as a matter of equity, of paying such costs." *Ibid.* If such a showing was made, the plaintiffs could "gain relief, or partial relief, from such assessment and subsequent efforts to collect such costs awarded to successful defendants." *Ibid*. *Weaver* remanded the resolution of such a challenge to the magistrate judge who had approved in forma pauperis status for the plaintiffs. *Ibid.* Although not perfectly clear, from the case as a whole it appears this secondary procedure was intended to apply to all in forma pauperis plaintiffs. *Cf. id*. at 1017 (Jones, J., dissenting) ("[t]he majority seeks to make its holding more palatable by obscuring the line between *in forma pauperis* plaintiffs who are prisoners and other *in forma pauperis* plaintiffs").

The *Weaver* challenge available to in forma pauperis plaintiffs, in which they had a method to avoid some or all of a district court's ordered costs, was considered to be incompatible (as to prisoners) with the PLRA's command that "[i]f the judgment against a prisoner includes the payment of costs . . . the prisoner shall be required to pay the full amount of the costs ordered." 28 U.S.C. § 1915(f)(2)(A). We so held directly in our administrative order on February 4, 1997, saying "we held [in *Weaver*] that courts have discretion in assessing costs against an unsuccessful prisoner who prosecuted his or her case in forma pauperis. Further, we noted that the courts were required to make a determination

Singleton's second argument addresses the constitutionality of the PLRA. We review de novo a challenge to the constitutionality of a federal statute. *See United States v. Brown*, 25 F.3d 307, 308-09 (6th Cir. 1994). Whether the PLRA, by its terms, may be retroactively applied in this case to govern the taxation of costs is a question of statutory construction subject to de novo review. *See Glover v. Johnson*, 138 F.3d 229, 249 (6th Cir. 1998).

The effective date of the PLRA is April 26, 1996. Our orders pursuant to the PLRA became effective on March 1, 1997. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1139 (6th Cir. 1997).

### *The Facial Constitutionality of 28 U.S.C. §§ 1915(f)(1),1915(f)(2)(A)*

Singleton claims that the imposition of large financial burdens resulting from his unsuccessful litigation unconstitutionally denies him access to the courts in violation of the First Amendment. This argument is foreclosed by our previous ruling in *Hampton v. Hobbs*, 106 F.3d 1281, 1284-85 (6th Cir. 1997). There, in evaluating the fee provisions of the PLRA, we found that "prisoners asserting civil claims in federal court have never been guaranteed a 'free ride.'" *Id*. at 1285. As discussed above, the PLRA itself has provisions that prevent assessments from being so burdensome that they would stop a prisoner from being able to bring suit. 28 U.S.C. § 1915(b)(4) (prisoner can file suit even if he has no assets at all). Although the issue here involves costs, rather than fees, and the costs are substantial, any litigant would be presumptively liable for these costs. The partial lifting of the subsidy previously enjoyed by prisoner-litigants does not deny them access to the courts, except that, like all poor persons, their access is restricted because they must weigh the risks and rewards of trying their claims in court. *See Weaver*, 948 F.2d at 1008; *Hampton*, 106 F.3d at 1286 (noting that PLRA forces prisoner to confront the same considerations as other civil litigants); *see also Roller v. Gunn*, 107 F.3d 227, 232 (4th Cir. 1997) (upholding cost provisions of the PLRA);

*McGill v. Faulkner*, 18 F.3d 456, 460 (7th Cir. 1994) (stating that imposing costs against indigent prisoner makes them "like anybody else").

Singleton's discussion of the caselaw on these points is inapposite, dealing with cases such as *Murdock v. Pennsylvania*, 319 U.S. 104, 115 (1943), which invalidated on First Amendment grounds special burdens on Jehovah's Witnesses' distribution of religious literature. The function of the challenged provisions of the PLRA is not to place special burdens on the prisoners, but to put them in the same position as other litigants, nor does it in fact prevent them from performing the protected activity (here, litigating claims), as the invalidated fees effectively did to the Jehovah's Witnesses.

Singleton also points out that a side effect of the cost provisions is that they will affect more heavily those with strong but ultimately unsuccessful claims. Frivolous litigants, whose claims are dismissed early on, will impose fewer discovery costs such as depositions on the other side, and will therefore be liable for fewer costs when the other side prevails. Singleton argues that this operates as a greater deterrent to the better claims,[1] and that cost provisions that do this effectively deny access to the courts. However, this cost-strength relationship is again true of all litigants and points out the fundamental weakness of Singleton's broader attacks on cost taxation. Costs of the sort considered here are not intended as punitive (therefore appropriately scaling, as Singleton suggests, with the frivolity of an action); such costs are primarily compensatory. Cost taxation is a common-law

---

[1]Of course, this relationship holds only along that part of the continuum which covers unsuccessful claims, ranging from the most to least invalid ones – a valid claim would *collect* costs, and because the most valid claim will be resolved soonest, it would usually collect the *fewest* costs. Singleton's claimed "injustice" is simply a consequence of an inherent feature of the adversary system, that more difficult cases are, *ceteris paribus*, more costly for everyone involved (plaintiff, defendant, and the courts).

*Retroactive Exclusion by the PLRA of Post-Award Challenges*

Prior to the enactment of the PLRA, it was possible for an unsuccessful indigent plaintiff to have a subsequent challenge to an award of costs through proof of inability to pay. *See Weaver*, 948 F.2d at 1014. As the district court in this case noted, the PLRA eliminated such challenges through its provisions requiring payment in full. Having upheld the award of costs, and the constitutionality of the relevant provisions of PLRA, our inquiry is not at an end, however, because we must determine to what extent the PLRA affects Singleton's litigation, which in part predates it.

There is a "traditional presumption" against retroactivity. *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994). In order to assess whether to apply a change in law to pending cases, *Landgraf* establishes a two-part test. First, we are to look at whether the new statute shows "clear congressional intent" defining its temporal reach and favoring retroactive application. *Ibid.* Second, if congressional intent is absent, the inquiry becomes whether "the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 270. New procedural rules are less likely to create retroactivity problems. *Id.* at 275. However, retroactivity concerns and analysis are also legitimately applied to procedural rules – "the mere fact that a new rule is procedural does not mean that it applies to every case." *Id.* at 275 n.29.

The Supreme Court's subsequent analysis of the PLRA in *Martin v. Hadix* concluded that the "PLRA contains no express command about its temporal scope." 527 U.S. 343, 362 (1999). The Court therefore analyzed the provisions in question there (on attorney's fees) under the second *Landgraf* test, as also seems appropriate here. The relevant question becomes whether the change in law in the Sixth Circuit, ultimately traceable to the passage of the PLRA, attached new legal consequences to events completed by Singleton in his case prior to the change in law. In answering this question, we are to be "informed and guided by 'familiar considerations

Singleton also claims that even if some costs were appropriate, the total award of costs was not.  He also contends that the district court felt it could not generate an equitable intermediate figure because it somehow took the PLRA as creating an "all-or-none" rule. (Singleton Br. at 13).  Although not cited by Singleton, district courts do occasionally remit part of otherwise allowable costs on equitable grounds, including the losing party's financial circumstances.  *See Jansen v. Packaging Corp. of America*, 898 F. Supp. 625, 630 (N.D. Ill. 1995); *Coulter v. Newmont Gold Co.*, 873 F. Supp. 394, 397 (D. Nev. 1994); *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 157 F.R.D. 13, 18 (E.D. Pa. 1994).  In evaluating a similar motion for costs against a prisoner under 28 U.S.C. § 1915(f)(2)(A), the Second Circuit has pointed out the discretion of a court to require indigent prisoners to pay costs, "or some part of them," in its initial choice of an award.  *Feliciano v. Selsky*,  205 F.3d 568, 572 (2d Cir. 1999).  We do not appear to have forbidden partial remittance of costs as part of a district court's discretion, despite a presumption for taxation of full costs.

Singleton asserts that the district court misunderstood the PLRA's requirement that *after* a court chooses to tax costs, the prisoner must pay in full.  Singleton claims the district judge felt his discretion was confined from even considering a partial award.  Assuming this would have been a mistake, there is no evidence the district court made it.  The district court simply pointed out that its assessments would not be subject to challenge or reduction on the basis of inability to pay.  It did not, as Singleton claims, adopt an "all-or-none" rule anywhere in the opinion.  There is no evidence the district court considered a partial award, and it was not required to do so.  Because there was no legal error, and because we are not convinced a clear error of judgment occurred, we hold that the initial award of costs was not an abuse of discretion.

tradition based on making a prevailing party genuinely whole (or at least closer to that ideal, in the American rule). Moreover, as mentioned above, the district court has discretion to deny (or perhaps reduce) costs if the losing party had a particularly strong case. Thus the legal system already has a method to deal with this alleged inequity. We therefore hold Singleton's challenge to the cost provisions of the PLRA, 28 U.S.C. §§ 1915(f)(1),1915(f)(2)(A), to be without merit.

### *Abuse of Discretion in Taxation of Costs*

Fed. R. Civ. P. 54(d) provides that "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs." We have held that "this language creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court." *White & White, Inc. v. American Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986).  We have identified several factors a losing party may put forward that may be sufficient to justify a district court in overcoming the presumption in favor of a cost award, including the losing party's good faith, the difficulty of the case, the winning party's behavior, and the necessity of the costs. *See, e.g., id.* at 732-33.  Although the ability of the winning party to pay his own costs is irrelevant, *id.* at 730, another factor weighing in favor of denying costs is the indigency of the losing party. *Jones*, 789 F.2d at 1233.  Although certain aspects of *Weaver v. Toombs*, 948 F.2d 1004, 1014 (6th Cir. 1991), have been superseded pursuant to the PLRA (discussed *infra* pp. 12-13), we have supported its rule that in forma pauperis status will not by itself provide an automatic basis for denying taxation of costs against an unsuccessful litigant. *See Hampton v. Hobbs*, 106 F.3d 1281, 1285 (6th Cir. 1997).

The district court in this case, after correctly stating the law on the matter, appears to have primarily considered the issues of indigency and whether the case was a "close and difficult one."  The judge found Singleton's claim, although reaching the jury stage, was not a difficult or close case.  On the

question of indigency, he seems to have weighed the point that Singleton's needs will be provided for the state in any event, and found the imposition of costs would not be overly burdensome on Singleton's life. *See Hampton*, 106 F.3d at 1285. The court further considered whether the imposition of costs would chill Singleton's exercise of constitutional rights, relying on our Circuit precedents in *Hampton* and *Weaver* to find that the effect did not rise to the level of a constitutional violation.

Since costs are presumptively awarded and the issue is in the discretion of the trial court, it requires a substantial showing for us to rule that this discretion was abused. Generally, this would require the lower court ignoring the criteria set by Sixth Circuit, *see White & White*, 786 F.2d at 730, or otherwise a certainty on our part that a clear error in judgment was committed. Singleton asserts that the court did not consider the size of the award in comparison with other cases where costs have been awarded or in proportion to Singleton's (minimal) income. Singleton also asserts that the district court incorrectly believed that it could not legally give a partial award of costs.

Because the payment provisions of the PLRA, 28 U.S.C. § 1915(b)(2), levy a twenty percent "tax" on his monthly assets above $10, Singleton will be not be that heavily affected on a day-to-day basis by the award. This effect on him is longer in time, but the same in severity, as the imposition upheld in *Hampton* (which involved only a $41 award). In prison, on the PLRA's "extended payment plan" and with his necessities provided for, Singleton's indigency is effectively mitigated. Singleton argues that because his income is unlikely to *ever* allow him to repay the costs imposed on him while in prison, he will be saddled with a significant debt upon leaving incarceration. Therefore, measuring the equities of his prisoner status against his indigency may not fully account for the effect of the costs; at some point as a middle-aged, ex-convict pauper he could well

be faced with some significant portion of the debt on the outside, unprotected by status as an inmate.[2]

The size of the award and the circumstances in which it will ultimately be applied should be equitable factors in evaluating the effect of indigency. *Cf. Weaver*, 948 F.2d at 1013 (agreeing "a district court . . . may look to such factors as the 'purpose of the rule,' 'the litigation history' of the party, 'good faith,' and '*the actual dollars involved*'") (emphasis supplied) (citation omitted); 16A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3985 at 710 n.8 (3d ed.1999) (citing *Weaver*). The lower court did not clearly refuse to take the award's size into consideration – it was aware of Singleton's financial condition, although it did not concern itself with any post-release effects of the award. In any event, we cannot be certain of an error on the part of the district court, as Singleton has, apparently, long years with which to prepare himself to be able to pay a debt which is not insurmountable if he is employable. *See McGill v. Faulkner*, 18 F.3d 456, 460 (7th Cir. 1994) (on abuse of discretion standard, upholding a $3214 cost award against a prisoner irrespective of indigency, and noting "we are not convinced on the record that McGill will not ever be able to pay the order imposing costs"). It is in Ohio's interest to see that Singleton acquires sufficient skills if the state ever wants to be paid. Singleton's situation may not be good, but the immediate effect of the award is muted. He remains better off than an impoverished free litigant who may be made utterly destitute by taxation of costs – Singleton will not be deprived of his home or his means of livelihood.

---

[2]Although Singleton may come into money by the time his sentence is served, the most likely scenario involves a payment per month, based on his monthly account balance of $21.18, of .2(21.18 - 10) = $2.04. Even after 20 years and 240 payments, this would leave an unrecovered debt in the neighborhood of $3367.75. In other cases, the imposition of an award with a very large "balloon payment" on release from prison has the potential to create perverse incentives, discouraging inmates from doing all they can to earn an early release date.