*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0071p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In re: CARDIZEM CD ANTITRUST LITIGATION.

EUGENIA WYNNE SAMS,

> *Plaintiff-Appellant,*

GORDON BALL,

> *Attorney-Appellant,*

　　　*v.*

STATE ATTORNEYS GENERAL; STATE LAW
PLAINTIFFS,

> *Plaintiffs-Appellees,*

STATE OF TENNESSEE,

> *Defendant-Appellee,*

HOECHST AKTIENGESELLSCHAFT, et al.,

> *Defendants.*

No. 05-2375

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-73190—Nancy G. Edmunds, District Judge.

Argued: December 8, 2006

Decided and Filed: February 22, 2007

Before: CLAY, ROGERS, and SUTTON, Circuit Judges.

---

## COUNSEL

**ARGUED:** Gordon Ball, BALL & SCOTT, Knoxville, Tennessee, for Appellants. Jay Himes, ATTORNEY GENERAL, STATE OF NEW YORK, New York, New York, for Appellees. **ON BRIEF:** Gordon Ball, BALL & SCOTT, Knoxville, Tennessee, for Appellants. Jay Himes, Robert L. Hubbard, ATTORNEY GENERAL, STATE OF NEW YORK, New York, New York, Michelle M. Rick, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

1

---

**OPINION**

---

SUTTON, Circuit Judge.  At the end of a case, "costs" are awarded to prevailing parties "as of course" for an assortment of trial-related expenses—such as court fees, court reporter fees and, as pertinent here, "compensation of court appointed experts."  Fed. R. Civ. P. 54(d)(1); 28 U.S.C. § 1920(6).  At the end of this case, the district court ordered Gordon Ball, an attorney for one of the parties to this action, to pay costs associated with the compensation of Rust Consulting, Inc., a class-action settlement administrator hired to disburse the $80 million settlement in this case.  Because Rule 54(d)(1) and § 1920(6) permit costs to be charged against parties, not their counsel, we reverse.

I.

In 1997, Hoechst Marion Roussel and Andrx Pharmaceuticals allegedly conspired to minimize competition for one of Hoechst's products—Cardizem CD, which is prescribed for the treatment of angina (chronic chest pains) and high blood pressure as well as for the prevention of heart attacks and strokes.  In connection with the alleged conspiracy, Hoechst paid Andrx nearly $90 million in return for Andrx keeping a competing generic drug off the market.  In August 1998, individual consumers (the "state law plaintiffs") filed what would become the first of 19 state law actions against the companies, and in 1999 the Judicial Panel on Multidistrict Litigation transferred the actions to the Eastern District of Michigan.  The attorneys general of all 50 States, Puerto Rico and the District of Columbia (the "attorneys general") eventually joined the litigation on behalf of their States and as *parens patriae* on behalf of the residents of their respective jurisdictions.

On January 29, 2003, the district court preliminarily approved an $80 million settlement of all of the claims.  The proposed settlement class consisted of "[a]ll consumers and Third Party Payers . . . who purchased and/or paid all or part of the purchase price of Cardizem CD Products" during the relevant time frame, including "all members of any class or classes asserted in any State Action."  JA 390–91.  On October 21, 2003, after conducting a fairness hearing concerning the settlement, the court certified the settlement class and granted final approval of the settlement agreement.

Eugenia Sams is a Tennessee resident who purchased Cardizem CD during the time period implicated by the alleged conspiracy.  Represented by Gordon Ball, she filed a complaint against the defendants in Tennessee state court in 1998, alleging violations of the Tennessee Trade Practices Act and the Tennessee Consumer Practices Act.  The drug companies removed her case to federal district court, after which the court transferred the case to the Eastern District of Michigan along with the other state law actions.

Sams objected to the settlement.  While she was not alone in doing so, she was nearly so: she was one of just two class members (out of 37,387) who objected to the settlement.  The court found little to be said for her objections, concluding that they were "all without merit."  JA 569.

Sams appealed the district court's settlement-approval order.  In response, the state law plaintiffs and the attorneys general sought, and obtained, permission to require Sams to post an appeal bond.  *See* Fed. R. App. P. 7.  The court ordered Sams to post a bond for $174,429 to cover projected attorney fees and administrative costs made necessary by the appeal.  Although Sams proceeded with her appeal regarding the propriety of the settlement and appealed the district court's bond order, she never posted the bond.

On December 14, 2004, the Sixth Circuit resolved Sams' appeals in a single opinion.  *See In re Cardizem CD Antitrust Litigation*, 391 F.3d 812 (6th Cir. 2004).  The court affirmed the appeal

bond, reasoning that "costs" under Appellate Rule 7 cover expenses "properly awardable under the relevant substantive statute." *Id.* at 817 (internal quotation marks omitted). Because Sams had filed her claim under state law, the court held that the "relevant substantive statute" was Tennessee Code § 47-18-109, the consumer-rights statute under which she had filed her lawsuit. *Id.* The court then held that the statute provided for the types of fees and costs covered by the appeal bond, including attorney fees and administrative costs, and that the district court did not abuse its discretion in calculating the amount of the bond. *Id.* at 818. The court then dismissed Sams' challenge to the settlement agreement because she failed to post the appeal bond. *Id.*

On remand, the state law plaintiffs and the attorneys general filed a motion to charge Sams with (1) the administrative costs caused by the delay ($255,683) under Rule 54(d)(1) and 28 U.S.C. § 1920(6) and (2) attorney fees caused by the delay ($290,363) under Rule 54(d)(1) and Tennessee Code § 47-18-109. Separately, they also filed a motion (1) to hold Ball and/or Sams in contempt for failing to post the appeal bond, (2) to sanction Ball for costs, fees and expenses incurred by the delay in the settlement under 28 U.S.C. § 1927 and (3) to require Sams to appear and testify at a hearing related to these issues.

The district court granted the motion for costs under § 1920(6), explaining that Rust Consulting, the settlement administrator, was "a court-appointed expert in this matter that provided services essential to the resolution of this case." JA 373. In doing so, the court ordered the lawyer (Ball), not the party (Sams), to pay the $255,683 in administrative costs attributable to the delay.

The court declined to award attorney fees under the Tennessee statute. It first acknowledged uncertainty over whether the law authorized such fees, then explained that, because counsel for the state law plaintiffs and the attorneys general already had been adequately compensated in the case, it "would exercise its discretion and not award these requested" fees even if Tennessee law permitted them. JA 378.

The court denied the § 1927 motion because, while the statute permits federal courts to impose costs and fees on attorneys who "unreasonably and vexatiously" "multipl[y]" proceedings, it permits such sanctions only for misconduct in that court. JA 378–79. In this instance, the court noted, the state law plaintiffs and attorneys general had sought these fees and costs for alleged vexatious conduct that occurred in the Sixth Circuit, not in the district court. The court finally denied the contempt motion, reasoning that even if contempt were appropriate, "[p]laintiffs will have obtained adequate relief for the delay caused by Sams' appeals" through the taxation of costs to Ball. JA 379–80.

## II.

On appeal, Ball challenges the district court's authority to issue the costs award—first because the relevant provisions at most allow costs to be imposed on parties, not their attorneys, and second because Rust Consulting was not a "court appointed expert." We give fresh review to questions about the meaning of Rule 54(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920(6); once it is established that the district court has authority to award costs, if indeed it does, we give deferential review to its decision to impose costs and to the amount of any award. *See BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 417 (6th Cir. 2005) ("As long as statutory authority exists for a particular item to be taxed as a cost, we do not overturn a district court's determination that the cost is reasonable and necessary, absent a clear abuse of discretion.") (internal quotation marks and brackets omitted).

A.

Rule 54(d)(1) of the Federal Rules of Civil Procedure says:

Costs Other than Attorneys' Fees.  Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law.  Such costs may be taxed by the clerk on one day's notice.  On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

Section 1920 says:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

The Supreme Court has set the table for resolving this dispute by giving us two pieces of guidance about the interrelation of the statute and the rule.  The costs that courts may tax under Rule 54(d)(1) are confined to the costs itemized in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987) ("[Section] 1920 defines the term 'costs' as used in Rule 54(d)."); *id.* (rejecting argument that "Rule 54(d) is a separate source of power to tax as costs expenses not enumerated in § 1920" because "no reasonable reading of these provisions together can lead to this conclusion, for [it] renders § 1920 superfluous").  And the discretion that Rule 54(d)(1) gives courts (the "unless the court otherwise directs" proviso) is discretion to decline requests for costs, not discretion to award costs that § 1920 fails to enumerate. *Crawford Fitting*, 482 U.S. at 441–42 ("The discretion granted by Rule 54(d) . . . is solely a power to decline to tax, as costs, the items enumerated in § 1920.").

At least one problem with the costs award in this case is that Rule 54(d) and § 1920 do not permit district courts to impose costs on attorneys, as opposed to the parties they represent.  While neither the rule nor the statute expressly says that costs may be awarded only against parties, that is the plain implication of what they do say.  Start with the statute.  The first sentence of § 1920 concerns taxable costs that "[a] judge *or* clerk of any [federal] court . . . may" impose. (Emphasis added.)  While one thinks of the types of costs covered by § 1920—court fees, court reporter fees, witness fees and the like—as being imposed as a matter of course by the clerk of the court on the

losing party, the federal courts have no tradition of permitting clerks to impose such costs on the party's counsel. The last sentence of the statute confirms the point: It indicates that the bill of costs, once allowed, will be "included in the judgment or decree," which runs against parties, not non-parties.

Rule 54(d)(1) points in the same direction. It speaks of allowing costs "as of course to the prevailing party." The norm of awarding such costs—awarding them "as of course"—equates to the norm of imposing them on the party, not the counsel. Elsewhere in Rule 54(d)(1), the rule provides for costs "against the United States, its officers, and agencies"—all of them potential *parties* to, not counsel in, litigation. Throughout the various provisions of Rule 54, the rule also refers to "relief" for, "rights" of and "liabilities" of "parties," further undermining the notion that the rule may be invoked to impose costs on non-parties. And still another provision of the rule says that, "[o]n request of a party or class member," the court will permit an adversary proceeding regarding a claim for attorneys' fees. Fed. R. Civ. P. 54(d)(2)(C). By permitting "part[ies]" and parties alone to challenge a proposed attorney-fee award, the rule necessarily implies that fees (as well as costs under the same rule) may be imposed only on parties, not their lawyers.

Also supporting this interpretation are other provisions that *expressly permit* costs and fees to be imposed on attorneys. Section 1927 of Title 28, for example, permits courts (though not court clerks) to require an "attorney" "to satisfy personally the excess costs, expenses, and attorneys' fees" incurred because the attorney "so multiplies the proceedings in any case unreasonably and vexatiously." And Rule 11 permits courts to do likewise. *See* Fed. R. Civ. P. 11(c) (permitting Rule 11 sanctions to be imposed on "attorneys" and "law firms" for, among other things, filing bad-faith or frivolous pleadings); *id.* 11(c)(2) (Sanctions may include "an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.").

The express authorization to allow courts to impose these costs on attorneys, and to do so only after the attorney has engaged in misconduct, suggests that neither § 1920 nor Rule 54(d) permits such awards on a discretionary basis. Otherwise, § 1927 and Rule 11 would have little value. Why undertake the burden of establishing cause under these provisions if § 1920 and Rule 54(d)(1) may be invoked to obtain the same award merely as an exercise of judicial discretion? The irresistible answer, it seems to us, is that the express provision for costs and fees against attorneys upon a showing of misconduct in one set of provisions (§ 1927 and Rule 11) implies the absence of such authority in another set of provisions (§ 1920 and Rule 54) that instructs courts to award costs "as of course." *See Christensen v. Harris County*, 529 U.S. 576, 583 (2000).

Only one court of appeals case, to our knowledge, has considered this issue, and it reached the same conclusion. In rejecting a similar argument, the Second Circuit explained that "Rule 54(d)(1) is phrased permissively not because it permits a court to impose costs on counsel instead of the losing party, but rather because it permits a court to refuse to impose costs on the losing party at all." *Wilder v. GL Bus Lines*, 258 F.3d 126, 129 (2d Cir. 2001) (per curiam). Acknowledging that Rule 11, § 1927 and a court's inherent powers permit federal courts to impose costs against an attorney as a sanction, the court reasoned that "[s]uch sanctions . . . are appropriate only where the attorney has acted in bad faith in the actions that led to the lawsuit or in the conduct of the litigation, or where the attorney has negligently or recklessly failed to perform his responsibilities as an officer of the court." *Id.* at 130. By contrast, the court added, allowing courts to tax costs against attorneys under Rule 54(d) "as of course," without any showing of bad faith or wrongdoing on their part, might "unduly deter attorneys from representing clients who possess non-frivolous claims." *Id.*

In defending the district court's order, the state law plaintiffs and attorneys general persist that courts nonetheless retain "equitable discretion" to impose costs on attorneys. But the purpose of Rule 54(d) and § 1920 is to define what costs may be imposed, when and how—not to offer those

explications, then leave it to judicial discretion to shift costs in an entirely different way under their historic equitable powers. Otherwise, "§ 1920, which enumerates the costs that may be taxed, serves no role whatsoever." *Crawford Fitting*, 482 U.S. at 441. If, as in *Crawford Fitting*, the Court was unwilling to permit courts to invoke their equitable powers to exceed the maximum witness fee allowed by statute per day, it seems equally inappropriate to permit a court to invoke its equitable powers to impose costs on attorneys rather than on the parties they represent. At the end of the day, the discretion permitted under the rule and the statute concerns whether to award costs, not whether to tax them against a non-party. *Wilder*, 258 F.3d at 129; *cf. Crawford Fitting*, 482 U.S. at 442.

Nor do the two cases cited in support of this equitable-discretion proposition—*Carter-Jones Lumber Co. v. Dixie Distributing Co.*, 166 F.3d 840 (6th Cir. 1999), and *Singleton v. Smith*, 241 F.3d 534 (6th Cir. 2001)—advance it. While *Carter-Jones* says that "a court of equity has traditionally had the power to fashion any remedy deemed necessary and appropriate to do justice in a particular case," 166 F.3d at 846, it does not address how Rule 54(d) and § 1920 channel and ultimately limit that authority. And *Singleton* merely acknowledges that Rule 54(d) "creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court," 241 F.3d at 539 (internal quotation marks omitted), without saying anything about the imposition of costs on non-parties.

The state law plaintiffs and attorneys general next point out that courts may order attorneys to pay costs and damages to prevailing appellees under Rule 38 of the Federal Rules of Appellate Procedure, which is silent as to who must pay such expenses, suggesting that courts also may tax costs against attorneys under Rule 54, which does not expressly limit cost awards to parties. But, as we have shown, Rule 54 and § 1920 offer several contextual indications that courts may impose these costs only against parties. Rule 54 and Appellate Rule 38, at any rate, differ in a critical respect: The latter requires a determination "that an appeal is frivolous" before attorneys for appellants may be asked to bear these expenses while Rule 54 provides for cost-shifting "as of course." The frivolity predicate of an Appellate Rule 38 order parallels the unreasonableness and vexatiousness determinations required by § 1927, suggesting that the appropriate analogy is between Appellate Rule 38 and § 1927, not between Appellate Rule 38 and Civil Rule 54 (or § 1920).

B.

The state law plaintiffs and attorneys general next offer two alternative bases for affirming the district court's order. *See City Mgmt. Corp. v. U.S. Chem. Co., Inc.*, 43 F.3d 244, 251 (6th Cir. 1994) (noting that appellate courts may affirm on alternative grounds supported by the record). They first point out that, when this case initially came before our court, we held that the district court was entitled to include Rust's projected "administrative costs" as part of the Rule 7 appeal bond entered against Sams under Tennessee Code § 47-18-109. *Cardizem*, 391 F.3d at 817–18. Under these circumstances, they argue, we are bound by this ruling under the "law of the case" doctrine. Not true. To begin, the appellees did not seek, and they did not obtain, costs from the district court under the Tennessee law—whether under the law-of-the-case doctrine or under any other doctrine. Instead, they asked for $290,363.73 of attorneys fees/costs under the statute, identified as those attributable to preparation for the first appeal by the state law plaintiffs and attorneys general. In their application, they then distinguished this amount from the $255,683.10 in "expert witness expenses" requested for "Rust's administrative costs" under § 1920(6). JA 657–58. The district court, moreover, entered, and we affirmed, the appeal bond against Sams, not Ball. Tennessee law, it appears, permits courts to tax costs against parties, not their attorneys, *see* Tenn. Code Ann. § 47-18-109(e)(2) ("[T]he court may require *the person instituting* the [meritless] action to indemnify the defendant . . . .") (emphasis added); *Perdue v. Green Branch Mining Co.*, 837 S.W.2d 56, 60 (Tenn. 1992) ("[T]he trial judge may apportion the costs *between the litigants* as . . . the equities demand.") (emphasis added), and the state law plaintiffs and attorneys general have not pointed to any case that

holds to the contrary. Under these circumstances, the appellees have failed to supply a legitimate basis for affirming the judgment on this alternative ground.

Equally unavailing is the second alternative ground offered for affirmance—28 U.S.C. § 1927. When appellees relied on this statute in the district court, the court rejected the argument on the ground that the "Sixth Circuit, rather than this Court, has authority to decide whether attorneys' fees, costs, and expenses in connection with Sams' appeals are warranted . . . because it is the Sixth Circuit where Plaintiffs allege Mr. Ball unreasonably and vexatiously multiplied the proceedings." JA 378. We agree because that is what the case law generally says and because Rust Consulting's additional expenses were caused not by the filing of the notice of appeal, but by the pursuit of that appeal in the Sixth Circuit. *See Webster v. Sowders*, 846 F.2d 1032, 1040 (6th Cir. 1988) (stating that "it appears clear that a trial judge cannot sanction a party or lawyer for taking an appeal" under Rule 11); *see also Manion v. Am. Airlines, Inc.*, 395 F.3d 428, 433 (D.C. Cir. 2004) (holding that "a district court may not award the cost of interlocutory appellate proceedings as part of sanctions under § 1927); *Connor v. Travis County*, 209 F.3d 794, 800–01 (5th Cir. 2000) (holding that district court improperly sanctioned attorney for filing frivolous appeal); *Morris v. Peterson*, 871 F.2d 948, 952 (10th Cir. 1989) (holding that sanctioning "attorneys for conduct on appeal is not within the authority of the district courts and is reserved to the court in which the appellate conduct occurred").

## III.

Our determination that the district court should not have imposed this costs award on Ball suffices to resolve this appeal. We therefore need not decide the second question presented: whether § 1920(6)'s reference to "court appointed experts" includes settlement administrators or whether it is limited to experts that, unlike Rust Consulting, were appointed by the court under Rule 706 of the Federal Rules of Evidence. *Cf. PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) ("[I]f it is not necessary to decide more, it is necessary not to decide more."). It bears noting, however, that appellees originally sought to impose this sizable costs award ($255,683) on the party (Sams) and may wish to do so on remand. At least one court has noted that the costs permitted for "court appointed experts" under § 1920(6) extend beyond experts appointed under Evidence Rule 706. *See Gaddis v. United States*, 381 F.3d 444, 456–57 (5th Cir. 2004) (en banc). Should the appellees seek to impose these costs on Sams on remand, the district court of course remains free to take whatever course the law permits. We offer the following thoughts about the question—non-binding, non-exhaustive, not-even-rising-to-the-level-of-dicta—only to avoid the impression that the grounds on which we based our decision today intimate that the Fifth Circuit's *Gaddis* decision is beyond second guessing.

*First*. In 1975, when Congress enacted the Federal Rules of Evidence, *see* Pub. L. No. 93-595, 88 Stat. 1926 (1975), it included Rule 706—entitled "Court Appointed Experts"—within the rules. Three years later, Congress amended § 1920 by adding paragraph six and its reference to "court appointed experts." *See* Pub. L. No. 95-539, 92 Stat. 2040 (1978). This chronology offers one suggestion that Congress meant the costs referred to in § 1920(6) to be the costs associated with experts appointed by the courts under Rule 706. To this day, indeed, Rule 706 and § 1920(6) remain the only two instances in which a federal rule or statute refers to "court appointed experts."

*Second*. The complementary relationship between § 1920(6) and Rule 706 goes beyond the rule's title. Rule 706(b) provides that court-appointed experts are "entitled to reasonable compensation in whatever sum the court may allow." This compensation, the rule adds, "shall be paid by the parties in such proportion and at such time as the court directs, and thereafter charged in like manner *as other costs*." *Id*. (emphasis added). By adding "court appointed experts" to § 1920(6) in 1978, Congress appeared to make express what Rule 706 had suggested—that the compensation of court-appointed experts represents a taxable cost under Rule 54(d).

A like parallel exists between the provision for costs of special interpretation services in §1920(6) and another federal statute. Congress enacted § 1920(6) in 1978 as part of the Court Interpreters Act, which included 28 U.S.C. § 1828—a statute that sets up "a program for the provision of special interpretation services in criminal actions and in civil actions initiated by the United States." 28 U.S.C. § 1828(a). Section 1828 also provides that, when such services are used at trial, the court "may order that all or part of the expenses shall be apportioned between or among the parties or shall be taxed as costs in a civil action." *Id*. § 1828(c). As with court appointed experts, § 1920(6) complements this provision by listing "costs of special interpretation services under section 1828 of this title" as taxable costs. Congress thus appears to have followed a common practice for court appointed experts and special interpretation services by enacting procedures for their use and compensation, then expressly identifying this type of compensation as a taxable cost under § 1920.

*Third*. The legislative history suggests a linkage between Rule 706 and § 1920(6). The House committee report accompanying the statute expressly links it to Rule 706, stating that the new section "makes express reference to the taxation of the compensation of a court appointed expert, as permitted by Rule 706 of the Federal Rules of Evidence." H.R. Rep. No. 95-1687, at *13, 1978 U.S.C.C.A.N. 4652, 4664.

*Fourth*. To the extent Congress meant to link § 1920(6) with Rule 706, it is clear that Rule 706 covers court-appointed expert *witnesses*. The text of Rule 706 refers to expert witnesses, and we have interpreted the provision to extend only to such witnesses and not other classes of individuals who could be deemed "experts." *See Reed v. Cleveland Bd. of Educ.*, 607 F.2d 737, 746 (6th Cir. 1979).

*Fifth*. Even if Rule 706 does not define the floor *and* ceiling of costs awardable under § 1920(6) for "court appointed experts," as *Gaddis* maintains, the state law plaintiffs and attorneys general are only halfway home. They still must proffer a reasonable interpretation of "court appointed experts" under § 1920(6) that extends to settlement administrators. The broad theory that the statute covers the costs for all specialized services provided in a "court appointed" capacity may prove too much. If true, it would make superfluous other provisions. Court reporters and special masters, for example, both use expertise to assist the court, and both are appointed by the court. *See* 28 U.S.C. § 753(a); Fed. R. Civ. P. 53(a). And the compensation of both is specifically provided for elsewhere: court reporters by § 1920 itself, *see* 28 U.S.C. § 1920(2); and special masters by Rule 53(h). *See, e.g.*, *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 35 (2003) ("A statutory interpretation that renders another statute superfluous is of course to be avoided."); *see also Crawford Fitting*, 482 U.S. at 444 (noting that Congress wished to "impose rigid controls on cost-shifting in federal courts").

*Sixth*. *Gaddis* does not stand alone. Other courts have reached a different conclusion. *See Nat'l Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 545 n.7 (9th Cir. 1987) (noting that "the words 'court appointed experts' in 28 U.S.C. § 1920(6) refer only to expert witnesses"); *Hall v. Baxter Healthcare Corp*., 947 F. Supp. 1387, 1393 n.9 (D. Or. 1996) ("Because [the court] did not appoint the experts [technical advisors] under Rule 706, their fees are not 'costs' that may be awarded to the prevailing party under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920(6)."); *Kansas ex rel. Stephan v. Deffenbaugh Indus., Inc*., 154 F.R.D. 269, 270 (D. Kan. 1994) (holding that "[a]lthough the [court-appointed] mediator may be an 'expert in the law,' he or she is not a Rule 706 expert witness whose costs are taxable under § 1920(6)").

IV.

For these reasons, we reverse the district court's order taxing Ball with settlement administration expenses incurred by Rust Consulting.